461 So.2d 160 (1984)
CITY OF JACKSONVILLE BEACH, Appellant,
v.
Aaron C. GRUBBS, Appellee.
No. AW-408.
District Court of Appeal of Florida, First District.
December 3, 1984.
Rehearing Denied January 9, 1985.
*161 Lamar Winegeart, III of Arnold, Stratford & Booth, Jacksonville, for appellant.
Tyrie A. Boyer of Boyer, Tanzler & Boyer, and Gelman & Koegler, Jacksonville, for appellee.
BARFIELD, Judge.
Appellee owns seven vacant lots in the City of Jacksonville Beach. In early 1983, he sought to have them rezoned from R-1A (single family residential) to R-2 (which allows duplexes). When the City Council denied his request, appellee sought and obtained injunctive relief in the circuit court. We agree with the city that the trial court based its ruling on considerations which are legally insufficient to overturn the zoning authority's discretionary decision, and we therefore reverse.
The eastern boundary of Jacksonville Beach is, naturally, the Atlantic Ocean. Three blocks west of the beach, U.S. Highway A-1-A runs north and south. The first block west of the highway is zoned for commercial uses. The next block west, in which appellee's property is located, is zoned partially for multi-family residential uses and partially for single family residential. The block is divided into twelve lots, six facing north and six to the south. The four most easterly lots are zoned R-3. The remainder of the block is zoned R-1A and that zoning continues westerly for several blocks. This "step-down zoning" has been in effect along A-1-A in the area of appellee's property since 1962; appellee purchased his lots in 1975 or 1976. Three of the four lots zoned R-3 in appellee's block contain 4-unit apartments, and the remainder of the block is vacant. A map is appended to our opinion for clarification.
Pursuant to the Local Government Comprehensive Planning Act of 1975, Fla. Stat. §§ 163.3161-.3211 (1983), the City of Jacksonville Beach has adopted a comprehensive plan which includes a Land Use Plan for the year 2000. The plan proposes multi-family uses from Fourth Street west to Ninth Street, which would include appellee's property.
At the time of the trial, there was a proposed zoning change to RS-3 (single family and duplexes) for the area that includes the appellee's property. This proposal was scheduled for public hearing and had not been acted on by the City Council at the time of the trial, and this court has not been advised of any action taken by the city which would render this appeal moot.
Both parties presented expert testimony regarding the current zoning and the city's refusal to grant the rezoning request. Essentially, the experts held similar opinions: they testified that zoning boundaries in mid-block are a fairly common practice but that placing boundaries at the street is preferable; that denial of the rezoning request, while not arbitrary and capricious, precluded multi-family uses which would be more reasonable for the property. Most of the experts felt that the property would be worth more if zoned for multi-family use, but that current zoning does not deprive it of all value. One of the city's experts believed that current zoning does not diminish the property's value at all, while appellee, a builder by trade, testified that he would "go broke" if he built single family residences on his lots.
The executive director of the Northeast Florida Regional Planning Council discussed the city's comprehensive plan. He noted that the plan is not self-executing and must be implemented by zoning and other ordinances.
*162 After hearing the evidence, the trial court found:
that the highest and best use of plaintiff's property would be the development of same for multi-family dwellings; that the zoning ordinance now in effect which restricts the use of said property to single family dwellings is unreasonably restrictive; that the defendant City, in recognition of the fact that the best and most logical use of the property in order to foster the orderly growth of the area, did, on October 30, 1980 by its Ordinance No. 7077, approve the comprehensive plan for the future growth of the City as proposed by the City Planning Commission of The City of Jacksonville Beach, Florida; that said comprehensive plan recommends that the entire area in which plaintiff's property lies be rezoned so as to authorize multi-family (2 family) dwellings; that growth in the area surrounding the property owned by plaintiff has been slow, with relatively few single family family [sic] dwellings having been constructed in the area and with the majority of growth having been in the construction of multi-family (4 unit) dwellings in the corridor lying just east of plaintiff's property. The Court further finds that although the necessary zoning ordinance and accompanying zoning map have not yet been adopted by the defendant City in order to put into effect the comprehensive plan recommended by said City Planning Commission and approved by the defendant City, it appears to be a logical conclusion that such new zoning ordinance and zoning map will be approved by the City Council of defendant City after public hearings have been completed.
(Emphasis in original).
The court enjoined enforcement of a zoning classification on the property more restrictive than R-2, which allows duplexes.
In essence, the court relied on three factors in reaching its conclusion. We find that none of these factors are legally sufficient to support the ruling and that the city's decision should have been upheld under Florida's "fairly debatable" standard of review.
The circuit court stated that denial of appellee's request prevented him from realizing the "highest and best use" of the property. That finding is irrelevant to proper disposition of cases of this nature. City of Miami v. Walker, 169 So.2d 842, 843 (Fla. 3d DCA 1964), cert. denied, 176 So.2d 511 (Fla. 1965). Rather, the burden is on the owner to show that the zoning imposed deprives the property of all beneficial use. City of Miami v. Zorovich, 195 So.2d 31 (Fla. 3d DCA), cert. denied, 201 So.2d 554 (Fla. 1967); see Burritt v. Harris, 172 So.2d 820 (Fla. 1965); Davis v. Situs Inc., 275 So.2d 600 (Fla. 1st DCA 1973). The only evidence to that effect was the self-serving testimony of appellee, evidence which was contradicted by all expert witnesses, including appellee's own, who expressed an opinion on the issue.
While we believe that the Local Government Comprehensive Planning Act mandates that the city's decision be "consistent with" its plan,[1] we cannot agree with the trial court that the plan is a proper ground for reversing the zoning authority. The testimony at trial and the document itself make it clear that it is intended as a general guideline for community growth for a twenty or twenty-five year period. It was not intended to accomplish immediate land use changes and legally did not do so. We believe the proper role of the comprehensive plan in cases such as the one sub judice was set forth by the Oregon Court *163 of Appeals in a similar factual and legal setting:[2]
[A] comprehensive plan only establishes a long-range maximum limit on the possible intensity of land use; a plan does not simultaneously establish an immediate minimum limit on the possible intensity of land use. The present use of land may, by zoning ordinance, continue to be more limited than the future use contemplated by the comprehensive plan... .
The applicable comprehensive plan contains no timetable or other guidance on the question of when more restrictive zoning ordinances will evolve toward conformity with more permissive provisions of the plan. In such a situation, we hold the determination of when to conform more restrictive zoning ordinances with the plan is a legislative judgment to be made by a local governing body, and only subject to limited judicial review for patent arbitariness. In adopting a comprehensive plan, a governing body necessarily makes a great number of legislative and policy judgments about what the future use of land might and should be. It is just as much a legislative judgment when the local governing body is called upon to decide whether "the future has arrived" and it is therefore appropriate to conform zoning with planning.
Marracci v. City of Scappoose, 26 Or. App. 131, 133-34, 552 P.2d 552, 553 (1976) (emphasis in original). Although the plan here at issue does contain a rough timetable, we do not find that fact makes the Marracci court's reasoning inapplicable to the facts before us.[3]
Finally, the trial court's reliance on the proposed new comprehensive zoning ordinance is illogical. The "if and when" of passage of the ordinance is too uncertain to support the judgment. Moreover, appellee will have the relief he seeks if the ordinance passes; if it fails, it provides no rationale for the ruling.
In summary, we believe that the zoning authority's decision should have been reviewed under the traditional "fairly debatable" standard of review and that neither the comprehensive plan nor the proposed zoning ordinance supported reversal below. The trial court's ruling was incorrect because the city produced evidence that its decision was related to the health, safety, welfare and morals of the community and there was no competent evidence that plaintiff was deprived of reasonable beneficial use of the property. To the contrary, experts agreed that the current zoning diminished the value of the property slightly, if at all. The trial court's finding regarding "highest and best" use is, of course, irrelevant to its review of a zoning decision. Likewise, expert opinions that the zoning boundary would have been better placed elsewhere are not grounds for either the trial or appellate court to substitute its judgment for that of the zoning authority.
Accordingly, the judgment is REVERSED and REMANDED to the trial court with instructions to reinstate the order of the City Council denying appellee's application for rezoning.
JOANOS and WIGGINTON, JJ., concur.
*164 
NOTES
[1] Fla. Stat. § 163.3194(1) provides in pertinent part:

After a comprehensive plan or element or portion thereof has been adopted in conformity with this act, all development undertaken by, and all actions taken in regard to development orders by, governmental agencies in regard to land covered by such plan or element shall be consistent with such plan or element as adopted.
"Development order" is defined in § 163.3164(5) to include "any order ... denying ... a development permit." Further, "development permit" includes "rezoning" under § 163.3164(6).
[2] Under the Oregon scheme, zoning ordinances must "carry out" the comprehensive plan. See Fasano v. Board of County Commissioners, 264 Or. 574, 582, 507 P.2d 23, 27 (1973).
[3] An altogether different result occurs if a zoning authority approves a use more intensive than that proposed by the plan. Such a decision should be subject to strict scrutiny. See Fasano, supra note 2; Comment, Burden of Proof in Land Use Regulation: A Unified Approach and Application to Florida, 8 Fla.St.U.L.Rev. 499 (1980).