473 So.2d 257 (1985)
ALACHUA COUNTY, Appellant/Cross-Appellee,
v.
EAGLE'S NEST FARMS, INC., Appellee/Cross-Appellant.
No. BC-394.
District Court of Appeal of Florida, First District.
July 18, 1985.
*258 Dennis R. Long, County Atty., Thomas D. MacNamara, Asst. County Atty., Gainesville, for appellant/cross-appellee.
William C. Andrews of Scruggs & Carmichael, Gainesville, for appellee/cross-appellant.
ERVIN, Judge.
Alachua County appeals from a final judgment ordering it to issue a special use permit to appellee for a private airstrip. Appellee cross-appeals from a partial summary judgment, upholding the validity of the county's special use permit ordinance. We reverse the final judgment on appeal, but affirm the partial summary judgment on cross-appeal.
On August 25, 1983, appellee submitted an application for a special use permit for a private airstrip on a 140-acre parcel of land in northeast Alachua County. The application states: (1) Appellee intends to develop the land as a residential development consisting of fourteen lots; (2) an integral part of the development will be a grass airstrip; (3) use of the airstrip will be limited "to the property owners in the development and their occasional invited guests"; and (4) no commercial use of the strip will be permitted. At the time of the application, the property was zoned agricultural, and its land use category was designated "Agriculture".
The county's Department of Planning and Development (Planning Department) recommended denial of the application "based on staff's determination of non-conformance with the intent and purpose of the Zoning Ordinance and enabling legislation." The Planning Department's report found that the character of the surrounding area is "predominantly rural but not remote", and that further residential development is expected. The report concluded that to accomplish "coordinated and harmonious development", appellee's proposed airstrip would best be located in the county's most remote locations. The county's Planning Commission also recommended denial of appellee's application. Finally, on November 11, 1983, the Board of County Commissioners (Board) denied appellee's application.
On December 8, 1983, appellee filed a two-count complaint in circuit court: Count I sought a declaratory judgment determining that the county's denial of the special use permit application was arbitrary, capricious and unreasonable, and a denial of equal protection; and (2) Count II sought a declaratory judgment finding Alachua County Ordinance 80-3, Section 14, to be an unlawful delegation of legislative power. After each party filed a motion for summary judgment as to Count II, the court granted the county's motion, finding that the special use permit ordinance contains standards which "conform with the requirements of the Local Government Comprehensive Planning Act of 1975, and provide an adequate framework for review by this Court."
During a non-jury trial on Count I, three of appellee's witnesses testified that flight patterns in and out of the proposed airstrip would be controlled and enforced to avoid residential areas, including a group of houses located three-fourths of a mile from the site of the proposed airstrip. York Phillips, director of the county's Planning Department, testified that the airstrip was inappropriate since its presence "would have the tendency of impeding an interest in the residential growth" of the area. Phillips admitted that in 1982, the county granted a special use permit to one Irvin Gleim for a grass airstrip in northwest Gainesville, but distinguished Gleim's application from appellee's application as follows: (1) While low, swampy land on two sides of Gleim's property will prevent development, there are no natural constraints in the area surrounding appellee's land; (2) only Gleim can use his airstrip, while fourteen property owners will be able to use appellee's; and (3) according to the Alachua County Comprehensive Plan, 1975-1995, *259 there is a higher potential for low density residential and mobile home development just east of appellee's property during the next 20 years. Phillips also testified that when residential developments are close to airports, homeowners express concerns about safety and noise; those concerns would prevent the fulfillment of the comprehensive plan in the areas surrounding appellee's property.
Richard Levey, chief of the county's planning services, testified that since the proposed airstrip was incompatible with the surrounding area, the airstrip "could and would alter the existing and potential residential character of the area." Finally, Allen Beidler, the county's chief comprehensive planner, testified that the airstrip was inconsistent with the comprehensive plan's goals and objectives, including the following: (1) "Protect land uses from encroachment of incompatible land use types"; and (2) "[e]ncourage land use patterns conducive to neighborhood development." Beidler admitted that the comprehensive plan does not define "incompatible use", and that determination of an incompatible use is a subjective judgment.
In its final judgment, the trial court found that appellee had complied with the standards required for the granting of a special use permit; the burden of proof shifted to the county to show by competent, substantial evidence that granting the application would adversely affect the public interest, or that denying the application was reasonably related to the public health, safety, morals or general welfare; the county failed to meet that burden; the issue is not fairly debatable; and the denial of the application was arbitrary, capricious and unreasonable.
First, we address whether Alachua County Ordinance 80-3, Section 14, constitutes an unlawful delegation of legislative authority. That section provides:
Section 14. Special Use Permits

14.1 Special Use Permits shall be required for the following uses: Mines; barrow pits; landfills; mobile home sales; junkyards; automotive, truck, or trailer rental; sales of fruits and vegetables on commercially zoned private property; kennels and their customary accessory uses; other uses specifically authorized for Special Use Permits in these Regulations; and any other special or unusual uses not otherwise specifically referred to or provided for in these Regulations.
14.2 No relief may be granted or action taken under the terms of this Section unless such relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the Alachua County Comprehensive Plan or these Regulations. The burden of demonstrating compliance with this subsection shall rest with the applicant.
14.3 The County Commission may require such provisions and conditions for the issuance of a Special Use Permit as it deems are in the public interest.
14.4 Special Use Permits shall be issued by the County Commission in accordance with the procedures set forth in subsections 20.1 through 20.3 of these Regulations.
City of Homestead v. Schild, 227 So.2d 540, 543 (Fla. 3d DCA 1969), sets out the applicable standard of review:
[T]he law of Florida is committed to the doctrine of the requirement that zoning ordinances and their exceptions must be predicated upon legislative standards which can be applied to all cases, rather than to the theory of granting an administrative board or even a legislative body the power to arbitrarily decide each case entirely within the discretion of the members of the administrative board or legislative body, or to shift a particular parcel of property arbitrarily from one zoning classification to another, whether by "variance", "exception" or "special use".
Additionally, the applicant "has a right to know what the requirements are that he must comply with in order to implement the permitted use; these requirements must be of uniform application, and once the requirements are met, the governing *260 body may not refuse the application." Effie, Inc. v. City of Ocala, 438 So.2d 506, 509 (Fla. 5th DCA 1983). Otherwise, "councilmen can act upon whim, caprice or in response to pressures which do not permit of ascertainment or correction." Id.
In view of the variety of proposed special uses considered by the Board in its role as issuer of special use permits, we consider that the requirements set out in section 14.2 are specific enough to be uniformly applied so as to instruct an applicant as to his burden or proof, and to provide an adequate framework for review. The key factor is the reference in section 14.2 to the county's comprehensive plan and the zoning regulations. Moreover, the language in section 14.2 is distinguishable from the language in zoning ordinances which have been struck down. See Drexel v. City of Miami Beach, 64 So.2d 317 (Fla. 1953) (the ordinance provided that multiple level parking garages would not be allowed except upon approval by the City Council "after a public hearing at which due consideration shall be given to the effect upon traffic of the proposed use"); Effie, 438 So.2d at 507 (the ordinance governing application for on the premises sale and consumption of alcoholic beverages provided that in consideration of the application, "the council shall take into account ... all other pertinent factors that may arise in connection with the particular application and location being considered"); Schild, 227 So.2d at 542 (the ordinance provided that the City Council had authority "in such cases as it deems necessary and essential to preserve and protect health, safety and welfare of the citizens of Homestead, to grant special use permits"). Also, we agree with the trial court's conclusion that the standards in section 14.2 conform with the "Local Government Comprehensive Planning Act of 1975." See Sections 163.3161(5), 163.3194(1) and 163.3201; City of Cape Canaveral v. Mosher, 467 So.2d 468, 470-471 (Fla. 5th DCA 1985) (J. Cowart, specially concurring). We therefore affirm the partial summary judgment.
Regarding the final judgment, the initial issue is whether the county's denial of appellee's special use permit application was a legislative or an administrative function. Since the special use permit, as defined by the zoning regulations, is more analogous to a special exception than a rezoning, the denial or issuance of a special use permit is essentially an administrative function. See Irvine v. Duval County Planning Commission, 466 So.2d 357 (Fla. 1st DCA 1985); Conetta v. City of Sarasota, 400 So.2d 1051 (Fla. 2d DCA 1981); 82 Am.Jur.2d, Zoning and Planning § 282 (1976); A. Rathkopf & D. Rathkopf, 3 The Law of Zoning and Planning, § 14.12(1) (4th ed. 1985); E. Yokley, 3 Zoning Law and Practice, § 20-1 (4th ed. 1979). Under this view, the test is not whether the denial was a fairly debatable issue before a legislative authority, but rather: (1) whether the applicant met the burden established in the zoning ordinance, and if so, then, (2) whether the Board demonstrated, by competent, substantial evidence, that the special use permit did not meet the standard of the zoning ordinance and was, in fact, adverse to the public interest. Conetta, 400 So.2d at 1052; Rural New Town, Inc. v. Palm Beach County, 315 So.2d 478 (Fla. 4th DCA 1975).
Section 14.2 provides that the applicant for a special use permit must establish that the permit can be granted without substantial detriment to the public good, and that it will not substantially impair the intent and purpose of the comprehensive plan or the zoning regulations. In the case at bar, appellee's witnesses testified that by restricting flight patterns, planes would not take off or land near residential areas. The county did not present any rebuttal evidence as to any actual safety or noise hazards associated with the proposed airstrip.
The second part of the test in section 14.2, regarding the permit's effect on the comprehensive plan, however, was not satisfied by the applicant's evidence. The county's witnesses testified that issuance of the permit would impair the following *261 goals and objectives of the county's comprehensive land use plan:
Goal: To encourage the orderly, harmonious, and judicious use of land, and to provide for the extension of the useful life of the land.
* * * * * *
Objectives:
* * * * * *
2. Protect land uses from encroachment of incompatible land use types.
* * * * * *
4. Encourage land use patterns conducive to neighborhood development.
Alachua County Comprehensive Plan, 1975-1995, 25-26. Regarding that testimony, the trial court stated that it failed to establish that the airstrip was inconsistent with the comprehensive plan or the zoning regulations. This finding was not, however, supported by the evidence. Appellee made no showing that its proposed airstrip "will not substantially impair the intent and purpose" of the comprehensive plan. The county's witnesses testified about the perceived fears associated with an airstrip which could prevent the orderly and expected residential development of the area surrounding appellee's property. Though there may be no specific or particular provisions of the comprehensive plan applicable to private airstrips, section 14.2 does not require substantial impairment of specific provisions of the comprehensive plan. Rather, section 14.2 requires a showing by the applicant that the permit, if granted, will not substantially impair the intent and purpose of the comprehensive plan. The trial court therefore erred in finding both that appellee met its initial burden, as set out in section 14.2, and that the county's denial was arbitrary, capricious and unreasonable.
Affirmed in part and reversed in part.
WENTWORTH and BARFIELD, JJ., concur.