559 So.2d 252 (1990)
B.B. McCORMICK & SONS, INC., a Florida Corporation; J.T. McCormick, Joseph M. Glickstein, Jr., and Edward F. Shore, As Personal Representatives On Behalf of the Estate of Benjamin R. McCormick; and J.T. McCormick, Individually; and St. Johns County, Appellants,
v.
The CITY OF JACKSONVILLE, Appellee.
No. 88-2567.
District Court of Appeal of Florida, First District.
March 20, 1990.
Hopping, Boyd, Green & Sams, Tallahassee, Glickstein & Glickstein, P.A., Neptune Beach, and Frank D. Upchurch, III of Upchurch, Bailey and Upchurch, P.A., St. Augustine, for appellants.
Rogers, Towers, Bailey, Jones & Gay, Jacksonville, for appellee.
NIMMONS, Judge.
Appellants challenge the denial of an injunction against the City of Jacksonville's construction of a sanitary landfill. We affirm.
The City proposes to locate the landfill in the vicinity of Durbin Creek Swamp on an 880 acre tract of land which it owns in Southeastern Duval County. There are approximately 328 acres of freshwater wetlands located on this parcel, which adjoins *253 St. Johns County and is located in the immediate vicinity of land owned by appellants McCormicks. Construction of the landfill will require the excavation and/or filling of approximately 53 acres of wetlands. The City intends to mitigate for the wetlands impact by creating wetlands and by placing approximately 263 acres of contiguous wetlands and 126 acres of uplands buffer in a perpetual conservation easement. Additionally, the City plans to restore surface water flow to approximately 40 acres of contiguous wetlands through the removal of a road which currently stretches across the wetlands. Other components of the City's elaborate and extensive mitigation plan are designed to minimize adverse environmental impact upon the affected area and preserve the natural functions of the wetlands. The City's Planning Department concluded that the project is consistent with the City's 2005 Comprehensive Plan for growth and development.
Appellants filed suit to enjoin construction of the landfill, asserting that the use of the proposed site as the location for a sanitary landfill is inconsistent with the comprehensive plan and is therefore prohibited. The trial court found that the construction of the landfill is consistent with the plan, and denied relief.
Under the terms of the Local Government Comprehensive Planning and Land Development Regulation Act, Sections 163.3161-163.3243, Florida Statutes (1987), each county and municipality is required to prepare and adopt a comprehensive plan to manage future growth and development. Section 163.3194(1)(a) provides:
After a comprehensive plan, or element or portion thereof, has been adopted in conformity with this act, all development undertaken by, and all actions taken in regard to development orders by, governmental agencies in regard to land covered by such plan or element shall be consistent with such plan or element as adopted.
Section 163.3194(3)(b) provides:
A development approved or undertaken by a local government shall be consistent with the comprehensive plan if the land uses, densities or intensities, capacity or size, timing, and other aspects of the development are compatible with and further the objectives, policies, land uses, and densities or intensities in the comprehensive plan and if it meets all other criteria enumerated by the local government.
Once adopted, a comprehensive plan may be amended. Sections 163.3184, 163.3187. Section 163.3215 provides for injunctive and other relief for parties aggrieved by land use changes that are inconsistent with the comprehensive plan.
Pursuant to the statutory mandate, Jacksonville developed in 1980 the 2005 Comprehensive Plan. The plan is composed of "elements," each of which sets out "policies," and appellants assert that the landfill is inconsistent with certain policies of the conservation/coastal zone protection element which pertain to freshwater wetlands.[1] The policies relating to freshwater wetlands state in part:[2]
A. The basic function served by selected freshwater marshes and swamps as natural ecological units, natural retention mechanisms and surface water storage and treatment areas should be maintained.
B. Major wetlands areas (those that are related to the existing or proposed drainage systems) should be acquired and retained in their natural state where feasible.
C. The principal stream valleys and other wetlands needed for stormwater retention, wildlife habitat, or other special environmental uses should be organized into the components of the city's open space and drainage system.

*254 D. Natural drainage patterns should be maintained and water flow should not be impeded by excavation or alteration of land topography except when necessary to improve water quality and/or control downstream flooding.
E. Natural watercourses may be channelized, straightened or otherwise modified when proven to be of public benefit.
F. In general, wetland areas should not be drained when this destroys the character of the area.
G. There should be no filling of the wetlands.
H. As a general rule, there should be no excavation in wetlands because the wetland function would be disrupted; vegetation would be obliterated, water flow disrupted, soil layers destroyed and drainage and drying out of wetlands facilitated. Excavation should occur only when required for public benefit.
I. Land clearing, grading or removal of natural vegetation in wetlands should be discouraged.
J. There generally should be no solid fill roads or other structures in wetlands because they obstruct water flow.
K. New development occurring in or adjacent to wetlands areas should be designed in such a way as to protect their natural ecological integrity.
L. Development in areas surrounding small pockets of wetlands such as cypress ponds should be encouraged to make use of those areas by maintaining their natural function and retaining them as open space.
M. Location of sanitary landfills; spoil and dump sites; sewage, waste and industrial lagoons within or adjacent to freshwater marshes and swamps should be discouraged.
Appellants assert that the landfill project is inconsistent with Policies G, I, L, and M, and hence inconsistent with the comprehensive plan, particularly in light of its proximity to Durbin Creek Swamp and the fact that when completed this project will be Jacksonville's largest landfill.
The City, on the other hand, successfully argued that the plan is more flexible than the construction urged by appellants. The City argued, and the trial court found, that in light of the elaborate mitigation, monitoring, and maintenance plans, the landfill proposal is consistent with the objectives and policies of the comprehensive plan.
The parties differ on the applicable standard of review. The City submits that its decision to site the landfill at this location should be reviewed by the deferential "fairly debatable" standard traditionally applied to zoning decisions, whereas appellants submit that the decision should be subjected to the more demanding standard of "strict scrutiny."
In City of Jacksonville Beach v. Grubbs, 461 So.2d 160 (Fla. 1st DCA 1984), we held that where the local zoning authority refused to rezone Grubbs' property from R-1A (a use less intensive than that contemplated by the comprehensive plan) to R-2 (the zoning classification recommended by the comprehensive plan), the zoning authority's decision was subject to the traditional "fairly debatable" standard because the plan set a maximum, not a minimum, limit on growth. At page 163, footnote 3, we said in dicta that if the zoning authority had approved a use more intensive than that recommended by the plan, the decision would be subject to strict scrutiny.[3]
The City submits that Grubbs calls for application of the fairly debatable standard to this case because the landfill is a less *255 intensive use than other uses permitted at the proposed site. The City points to evidence that with the planned mitigation, the landfill will be a less intensive use than other uses permitted by the land use element (which addresses intensity of land development) and the conservation/coastal zone protection element. We disagree with the City's analysis. The "fairly debatable" standard was applied in Grubbs because we concluded that the local government's zoning decision was within the limits set by the plan. Accordingly, there was no reason not to apply the deferential test typically applied to zoning. In the instant case, however, the issue is not zoning, but rather whether the project is consistent with the plan.
In Southwest Ranches Homeowners Association, Inc. v. Broward County, 502 So.2d 931, 935 (Fla. 4th DCA 1987), the court rejected Broward County's argument that it was obligated to comply only with the land use element of the comprehensive plan. We also reject the City's comparable argument that compliance with the land use element of the plan requires that the question of compliance with the other elements be answered by means of the "fairly debatable" standard. We agree with the view expressed by the Fourth District that the statutory purpose "cannot be achieved without meaningful judicial review in lawsuits brought under the Planning Act[,]" Id. at 936, and that a standard of review stricter than "fairly debatable" is appropriate.[4]
Case law addressing the meanings of "consistency" and "strict scrutiny," e.g. City of Cape Canaveral v. Mosher, 467 So.2d 468 (Fla. 5th DCA 1985); Southwest Ranches, supra; Machado v. Musgrove, 519 So.2d 629 (Fla. 3d DCA 1987), is of limited assistance because these cases deal primarily with zoning changes and whether such changes are consistent with land use intensity limitations imposed by the comprehensive plan, a matter relatively easily subject to examination for strict compliance with the plan. In the instant case, however, resolution of the issue of consistency depends heavily upon interpretation of the terms of the plan, a circumstance not present in the above-cited cases.
In Machado v. Musgrove, 519 So.2d 629, 632 (Fla. 3d DCA 1987), the court stated:
The test in reviewing a challenge to a zoning action on grounds that a proposed project is inconsistent with the comprehensive land use plan is whether the zoning authority's determination that a proposed development conforms to each element and the objectives of the land use plan is supported by competent and substantial evidence. The traditional and non-deferential standard of strict judicial scrutiny applies.
Strict scrutiny is not defined in the land use cases which use the phrase but its meaning can be ascertained from the common definition of the separate words. Strict implies rigid exactness, People v. Gardiner, 33 A.D. 204, 53 N.Y.S. 451 (1898), or precision, Black's Law Dictionary 1275 (5th ed. 1979). A thing scrutinized has been subjected to minute investigation. Commonwealth v. White, 271 Pa. 584, 115 A. 870 (1922). Strict scrutiny is thus the process whereby a court makes a detailed examination of a statute, rule or order of a tribunal for exact compliance with, or adherence to, a standard or norm. It is the antithesis of a deferential review.
In a special concurring opinion in City of Cape Canaveral v. Mosher, 467 So.2d 468, 471 (Fla. 5th DCA 1985), Judge Cowart stated:
The word "consistent" implies the idea or existence of some type or form of model, standard, guideline, point, mark or measure as a norm and a comparison of items or actions against that norm. Consistency is the fundamental relation between the norm and the compared item. If the compared item is in accordance with, or in agreement with, or within the parameters specified, or exemplified, by *256 the norm, it is "consistent" with it but if the compared item deviates or departs in any direction or degree from the parameters of the norm, the compared item or action is not "consistent" with the norm.
In Southwest Ranches, supra, the Southwest Ranches Homeowners Association challenged Broward County's decision to rezone a parcel of land so as to permit the construction of a sanitary landfill on that site. The rezoning permitted a more intensive use of the land than was contemplated by the comprehensive plan, thus rendering it apparently inconsistent with the land use element of the comprehensive plan. The Fourth District rejected Judge Cowart's "fairly rigid approach," concluding that "the legislative scheme calls for a more flexible approach to the determination of consistency." Id. at 936. The court based this determination heavily upon Sections 163.3194(4)(a)(b), which provide:
(a) A court, in reviewing local governmental action or development regulations under this act, may consider, among other things, the reasonableness of the comprehensive plan, or element or elements thereof, relating to the issue justiciably raised or the appropriateness and completeness of the comprehensive plan, or element or elements thereof, in relation to the governmental action or development regulation under consideration. The court may consider the relationship of the comprehensive plan, or element or elements thereof, to the governmental action taken or the development regulation involved in litigation, but private property shall not be taken without due process of law and the payment of just compensation.
(b) It is the intent of this act that the comprehensive plan set general guidelines and principles concerning its purposes and contents and that this act shall be construed broadly to accomplish its stated purposes and objectives.
The Homeowners Association also asserted that the landfill project was inconsistent with other plan elements relating to environmental protection. These allegations were rejected, primarily on the basis of the trial court's finding that the project as proposed did not pose an environmental hazard. The opinion also noted that the County acknowledged that it had selected the lightly settled site largely because of resistance that it had encountered at other locations from residents of municipalities opposed to the placing of the site in their neighborhoods. In the view of the Fourth District, this factor of public opposition constituted "a valid additional consideration to the overall determination of consistency." Id. at 939. Accordingly, the court found that the project was not "fatally inconsistent" with the plan. Id. at 939-40.
In Machado supra, the court agreed with Judge Cowart's view and disagreed with what it termed "the unique view adopted by the court in Southwest Ranches that it may weigh competing public and private interests for determining consistency even where a proposed development fails to conform to one or more critical elements of the land use plan." 519 So.2d at 633 n. 3.
In Battaglia Fruit Co. v. City of Maitland, 530 So.2d 940 (Fla. 5th DCA 1988), Chief Judge Sharp stated in her dissent that "zoning decisions are held by reviewing courts to strict scrutiny when the change is apparently inconsistent with the plan."[5]
*257 As previously noted, the above-cited cases, which address the application of strict scrutiny to a zoning action which is facially inconsistent with the plan, are distinguishable from the instant case, in which resolution of the issue of consistency is heavily dependent upon interpretation of the terms of the plan.
It is well established that the construction of a statute by the agency charged with its enforcement and interpretation is entitled to great weight and should be upheld unless clearly unauthorized or erroneous. PW Ventures, Inc. v. Nichols, 533 So.2d 281, 283 (Fla. 1988). In Alachua County v. Eagle's Nest Farms, Inc., 473 So.2d 257 (Fla. 1st DCA 1985), we implicitly recognized the local planning agency's authority to construe the comprehensive plan, where we held that the applicant for a special use permit failed to overcome the county's objection that granting of the permit would impair the intent and purpose of the comprehensive plan.
In the instant case, however, the provisions of the conservation/coastal zone protection element cited by appellants indicate that the placement of a landfill in a wetlands area is, at best, considered undesirable. Under such circumstances, the explanation offered by the local body for concluding that the project is consistent with the plan, despite suggestions to the contrary in the language of the plan itself, should not simply be accepted at face value. It should instead be carefully examined in light of the language of the plan, with regard to whether the local government's rationale can be reconciled with the provisions of the plan. Upon examination, we conclude that competent substantial evidence supports the conclusion of the trial court and the City's planning department that this project is consistent with the comprehensive plan.
John Cannon, who supervised the preparation of the plan, testified that the statement "[t]here should be no filling in wetlands" was not meant to literally prohibit all filling of wetlands. Cannon and other witnesses testified that as a practical matter the occurrence of development would necessarily require some filling of wetlands, which are abundant in Jacksonville. Additionally, Cannon testified that at the time that the plan was promulgated, the definition of "wetlands" was uncertain. Victoria Tschinckel, the former Secretary of the Department of Environmental Regulation, assisted in the selection of the site for the landfill. She testified that after "negative screening," which screens out areas due to other factors, it was not possible to locate this landfill within Duval County without impacting wetlands. She further testified that filling in wetlands is subject to state and federal standards, and that federal standards require that a party wishing to fill a wetland area look for a practical alternative. Additionally, she testified that the only absolute prohibition against filling of wetlands of which she is aware is a prohibition against the filling of approved shellfish harvesting areas (not involved in this case). A consulting engineer testified that "it would be next to impossible" to site a landfill of this size in Duval County without impacting wetlands.
Dr. Earl Starnes (an expert who testified on behalf of appellants that in his opinion the landfill project is inconsistent with the plan) testified that, in his view, the references in Policies I and M to "discouraging" of certain activities do not totally proscribe these activities but rather require that standards be adopted to review applications for such activities. Chapter 380 of the City of Jacksonville Ordinance Code provides for some general standards, and we note that federal, state and local authorities have independently adopted extensive standards regarding development in wetlands. Additionally, the City's mitigation plan includes an upland buffer between the wetland and the construction. Accordingly, we find that competent substantial evidence supports the trial court's finding that the plan does not necessarily prohibit the location of a sanitary landfill in freshwater wetlands, particularly in light of the reasonableness standard expressed in Section 163.3194(4)(a), previously quoted herein.
The City also maintains that the 2005 Comprehensive Plan is concerned with the *258 protection of natural functions of wetlands and permits development therein so long as those functions are conserved, drawing a distinction between preservation of the wetlands themselves and conservation of the functions thereof. The City relies partially upon Policies A, F, H, J, and K, supra, and references therein to protection of the character and functions of wetlands, to support its interpretation. Appellants counter that Policies G, I, L, and M, as well as other statements of policy, demonstrate an orientation towards protection of the resource itself rather than simply preservation of functions. As appellants point out, the conservation/coastal zone protection element alludes to conservation of important natural resources and the functions that they provide. While the plan does evidence specific concerns with conservation of natural functions of wetlands, the policies relied upon by appellants also indicate a concern with protection of the wetlands themselves in addition to their functions. Nevertheless, the City's preservation of the functions of the wetlands, along with the extensive mitigation measures taken, lends support to a finding that the project is consistent with the plan.
Accordingly, we find that competent substantial evidence supports the finding of the City and the trial court that this project is not inconsistent with the comprehensive plan.
Appellants also assert that the operation of a sanitary landfill on the proposed site is not authorized by the governmental use zoning classification of this site. We have examined this contention and find it to be without merit.
AFFIRMED.
THOMPSON and WIGGINTON, JJ., concur.
NOTES
[1] Appellants alleged inconsistency with other elements of the plan as well, but on appeal limit their inconsistency argument to the conservation/coastal zone protection element.
[2] John Cannon, the city planning official in charge of preparation of the plan, testified that terms such as "should" and "discourage" are used throughout the plan to express policy. He specifically directed his staff members to eliminate the use of the word "shall."
[3] The distinction drawn in Grubbs has been criticized as conducive to poor zoning practices. City of Cape Canaveral v. Mosher, 467 So.2d 468, 470 n. 4 (Fla. 5th DCA 1985) (Cowart, J., concurring specially); McPherson, Cumulative Zoning and the Developing Law of Consistency with Local Comprehensive Plans, 61 Fla.B.J. 71 (July/August 1987). The Third District also apparently disagrees with Grubbs. Machado v. Musgrove, 519 So.2d 629, 633 (Fla. 3rd DCA 1987). The Fourth District, on the other hand, has indicated that it agrees with the Grubbs rationale. Southwest Ranches Homeowners Association, Inc. v. County of Broward, 502 So.2d 931, 936 (Fla. 4th DCA 1987).
[4] A party asserting that a zoning decision is invalid because not fairly debatable bears an extraordinary burden. S.A. Healy Company v. Town of Highland Beach, 355 So.2d 813 (Fla. 4th DCA 1978).
[5] The majority decided the case on procedural grounds and found it unnecessary to reach the merits. Cf. St. Johns County v. Owings, 554 So.2d 535 (Fla. 5th DCA 1989) (where requested rezoning is denied on grounds that the rezoning would be inconsistent with the comprehensive plan, fairly debatable standard applies to circuit court appellate review of denial); Sengra Corporation v. Metropolitan Dade County, 476 So.2d 298 (Fla. 3rd DCA 1985) (accord); Hillsborough v. Putney, 495 So.2d 224 (Fla. 2nd DCA 1986) (denial of rezoning should not be overturned where evidence before Board of County Commissioners reasonably supported its conclusion that rezoning application did not comply with comprehensive plan requirements); Alachua County v. Eagle's Nest Farms, Inc., 473 So.2d 257 (Fla. 1st DCA 1985) (application for special use permit properly denied where applicant failed to meet burden, imposed by county ordinance, of showing that issuance of the permit would not substantially impair the intent and purpose of the comprehensive plan).