DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BOCA CENTER AT MILITARY, LLC,** a foreign limited liability company,
**CP OTC, LLC,** a foreign limited liability company, and
**CP BOCA PLAZA, LLC,** a foreign limited liability company,
Appellants,

v.

**CITY OF BOCA RATON,**
Appellee.

No. 4D19-2736

[February 3, 2021]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Howard K. Coates, Jr., Judge; L.T. Case No. 50-2018-CA-013466-XXXX-MB.

Henry B. Handler, William J. Berger, and David K. Friedman of Weiss, Handler & Cornwell, P.A., Boca Raton, for appellants.

Laura K. Wendell and Daniel L. Abbott of Weiss Serota Helfman Cole & Bierman, P.L., Fort Lauderdale, for appellee.

FORST, J.

Appellants Boca Center at Military, LLC, CP OTC, LLC, and CP Boca Plaza, LLC, the owners of several properties within the Midtown area of Boca Raton ("the subject properties"), appeal from the trial court's final order dismissing with prejudice their cause of action against Appellee, the City of Boca Raton ("the City"). Appellants' complaint alleged that the City's actions inordinately burdened their existing use of the subject properties so as to require compensation under the Bert J. Harris Jr. Private Property Rights Protection Act, section 70.001, Florida Statutes (2018) ("the Bert Harris Act" or "the Act").

The City responded that: (1) Appellants had not satisfied the Act's pre-suit notice requirements because they had changed their theory of recovery and alleged new claims in their complaint as opposed to those delineated in their pre-suit "Notice of Claim"; (2) no law or regulation had been "applied" to the subject properties (because the City had failed to

either provide notice of the law's enactment or formally deny a written request submitted by the property owners for development or variance); and (3) the City did not take an action that burdened an existing use of the subject properties. The trial court agreed with the City on all three grounds, and dismissed Appellants' complaint with prejudice.

We need not address the trial court's decision to dismiss the complaint with prejudice as it relates to the failure to satisfy the pre-suit notice requirements or to the failure to establish that a law or regulation had been "applied" to the subject properties. As we conclude that dismissal of Appellants' complaint with prejudice was appropriate with respect to their contention that the City took actions which newly burdened an existing use of the subject properties, and that an amended complaint on this point would be futile, we affirm.

**Background**

As noted above, the properties that are the subject of this litigation are located within the Midtown area of the City. Before 2010, Midtown was zoned for office, commercial and retail development, and had, in fact, been used only for these purposes. In 2010, the City amended its Comprehensive Plan to assign the area in which the subject properties were located a Planned Mobility ("PM") future land use designation, which "*may* incorporate in addition to those permitted and conditional uses authorized by the underlying zoning district regulations [already] in effect . . . a range of uses such as commercial, office, financial institutions, health care, *residential*, hotel, recreational, educational, community and cultural facilities." (emphasis added). Despite this amendment to the City's Comprehensive Plan, no actions were taken to change the actual zoning of this area.

In 2014, four years after the City amended the comprehensive plan to include a PM designation, Appellants acquired and became the owners of the subject properties. At the time, there were no zoning regulations in place permitting residential use on the properties at any level of density.

In early 2018, the City voted to postpone indefinitely the consideration of supplemental land development regulations ("LDRs"). Such zoning regulations, if adopted, would for the first time have allowed multi-family residential development on the subject properties. This action (or inaction) led Appellants to file pre-suit Notices of Claim, pursuant to section 70.001(4)(a). These Notices alleged that the City's decision to postpone enactment of LDRs "inordinately burdened" the subject properties. In response, the City informed Appellants that, "notwithstanding that the

City has taken no 'action' required for [Appellants] to state a claim under the Act, the City hereby offers 'no changes to the action of the government entity.'"  Appellants then filed their original Bert Harris Act complaint against the City, in October 2018.

In January 2019, the City adopted new zoning regulations for the Midtown area (including the area encompassed by the subject properties), which reinforced its decision not to rezone for residential occupancy. These regulations maintained the same zoning as had pre-existed the Comprehensive Plan amendment.  Specifically, the regulations continued to allow for commercial, office and retail use of the subject properties but did not provide for residential development.

Addressing the City's recent actions and its motion to dismiss Appellants' original complaint, an amended complaint was filed in April 2019.   After recounting the City's actions/inaction since the 2010 Comprehensive Plan amendment, the complaint alleged:

> The City's actions alleged in the Amended Complaint inordinately burden an "existing use" of the Subject Properties ("existing use" defined as in § 70.001(3)(b)2., Fla. Stat.) in that, by them, the City has directly restricted or limited the use of the Subject Properties such that Plaintiffs are permanently unable to attain the reasonable, investment-backed expectation for the existing use of the Subject Properties as a whole or that Plaintiffs are left with existing or vested uses that are unreasonable such that Plaintiffs bear permanently a disproportionate share of a burden imposed for the good of the public, which in fairness should be borne by the public at large.
>
> The City's actions prevent Plaintiffs from receiving the benefit of the more favorable residential use applicable to the PM land use designation and inordinately burden the Subject properties.

The City filed a motion to dismiss the amended complaint.  The trial court, in a detailed order, granted the motion, dismissing the amended complaint with prejudice.  This appeal followed.

## Analysis

A trial court's ruling on a motion to dismiss is subject to de novo review. *See, e.g., Pillay v. Public Storage*, 284 So. 3d 566, 568 (Fla. 4th DCA 2019)

3

("Orders granting motions to dismiss for failure to state a claim are reviewed de novo.") (citing *Regis Ins. Co. v. Miami Mgmt., Inc.*, 902 So. 2d 966, 968 (Fla. 4th DCA 2005)); *M & H Profit, Inc. v. City of Panama City*, 28 So. 3d 71, 74 (Fla. 1st DCA 2009) ("We consider whether the trial court's order dismissing the case for failure to state a cause of action is correct as a matter of law.").

Determinations under the Bert Harris Act that a claimant has an existing use of the real property are conclusions of law and we review such conclusions de novo. *City of Jacksonville v. Coffield*, 18 So. 3d 589, 594 (Fla. 1st DCA 2009).

The Bert Harris Act "provides for relief, or payment of compensation, when a new law, rule, regulation, or ordinance of the state . . . unfairly affects real property." § 70.001(1), Fla. Stat. (2018). The Act expressly states that it is predicated on "specific action of a governmental entity [that] has inordinately burdened an existing use of a real property or a vested right to a specific use of real property . . . ." § 70.001(2), Fla. Stat. (2018). For purposes of the Bert Harris Act, "[t]he term 'action of a governmental entity' means *a specific action* of a governmental entity which affects real property, including action on an application or permit." § 70.001(3)(d), Fla. Stat. (2018) (emphasis added). "[I]nordinate burden" and "inordinately burdened" are defined as "*an action* of one or more governmental entities [that] has directly restricted or limited the use of real property such that the property owner is permanently unable to attain the reasonable, investment-backed expectation for the existing use of the real property or a vested right to a specific use of the real property . . . ." § 70.001(3)(e)1., Fla. Stat. (2018) (emphasis added).

Thus, by its express terms, the Act protects against governmental *action* rather than government *inaction*. Specifically, the Act provides a mechanism to remedy burdens created by the *enactment of new* regulations, ordinances, etc.—not the refusal to enact new laws or where the governmental entity has taken no action and instead has maintained the already established zoning restrictions.

However, Appellants rely on the Act's definition of "existing use" to include "[a]ctivity or such reasonably foreseeable, nonspeculative land uses which are suitable for the subject real property and compatible with adjacent land uses and which have created an existing fair market value in the property greater than the fair market value of the actual, present use or activity on the real property." § 70.001(3)(b)2., Fla. Stat. (2018). They argue that the 2010 amendments to the Comprehensive Plan created a reasonable expectation that the subject properties *would* be zoned for

residential use, creating an expectation that Appellants "could develop the [subject properties] with an economically-viable, multi-family residential land use density of up to 20 units per acre of gross land area which would allow up to 1,274 multi-family units." Thus, Appellants maintain that the City's subsequent inaction – namely, its decision to not fully adopt the goals of the amended Comprehensive Plan – constituted an "inordinate[] burden" on the Appellants' land use.

As noted above, the subject properties were not and had never been zoned for residential development, and the 2010 amendment to the Comprehensive Plan merely expressed an expectation that, in the future, residential development *may* be permitted, as the Plan "encourages" (and therefore does not require) "a mixture of land uses." Per the "Mandatory/Permissive Canon," the word "may" is commonly treated as a permissive word granting discretion. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 112 (2012); *Brooks v. Anastasia Mosquito Control Dist.*, 148 So. 2d 64, 66 (Fla. 1st DCA 1963) ("It must be assumed that the Legislature of this state must know the plain and ordinary meaning of words and that the [word] 'may' when given its ordinary meaning, denotes a permissive term rather than the mandatory connotation of the word 'shall.'").

It is a leap in logic to argue that the Comprehensive Plan's permissive language made it "reasonably foreseeable" and "nonspeculative" to assume that the subject properties would be zoned by a specific date for residential use. A property owner does not "reasonably foresee" the enactment of land development regulations authorizing whatever use it hopes to make of its property in the future. As the Florida supreme court has declared:

> A comprehensive plan only establishes a long-range maximum limit on the *possible* intensity of land use; a plan does not simultaneously establish an immediate minimum limit on the possible intensity of land use. The present use of land may, by zoning ordinance, continue to be more limited than the future use contemplated by the comprehensive plan.

*Bd. of Cnty. Comm'rs of Brevard Cnty. v. Snyder*, 627 So. 2d 469, 475 (Fla. 1993) (emphasis added) (quoting *City of Jacksonville Beach v. Grubbs*, 461 So. 2d 160, 163 (Fla. 1st DCA 1984)).

Thus, per *Snyder*, even if the Comprehensive Plan explicitly authorized development for residential use (which is not the case here, as the plan merely contemplated a "range of uses"), the actual permitted uses of the

subject properties would nevertheless be confined to those the City chose, by legislative action, to *expressly* permit in the zoning code. The PM future land use designation granted no right to residential development and *did not require* the City to enact land development regulations establishing such a right by permitting residential uses on the subject properties. *Snyder* does not hold that a government must adopt land development regulations authorizing *all* uses that are consistent with the comprehensive plan. "[T]he comprehensive plan is intended to provide for *future* use of land . . . ." *Id.* at 475. "[T]he fact that a proposed use is consistent with the plan means that the planners contemplated that the use would be acceptable *at some point in the future.*" *Id.* at 476 (emphasis added); *see also Citrus County v. Halls River Dev., Inc.*, 8 So. 3d 413, 421 (Fla. 5th DCA 2009) ("Zoning involves the *exercise of discretionary powers* within limits imposed by the comprehensive plan." (emphasis added)).

### Conclusion

Appellants do not contend that the City adopted "any law, rule, regulation or ordinance" in relation to the subject properties that burdened their use as a residential development. Rather, they allege the opposite— that the City affirmatively chose not to authorize residential use of property within the subject properties' zone, and that this "inaction" inordinately burdened Appellants' expectation that the subject properties would, for the first time, be zoned for residential use.

However, the 2010 Comprehensive Plan merely gave the City a green light to *consider* permitting "mixed use development" of the subject zone at some unspecified time in the future, and stated that residential uses (of an unspecified density) was one of several possible property uses that *may* be approved at an unspecified time in the future. Thus, the trial court correctly determined that none of the post-2010 City ordinances took away existing development opportunities for the subject properties, real or "reasonably foreseeable," attributable to the 2010 amended Comprehensive Plan. These laws and regulations merely preserved the status quo zoning on the subject properties. As Appellants' factual allegations do not state an actual cause of action under the Bert Harris Act, we affirm, finding it unnecessary to address the other grounds on which the trial court rested its order of dismissal.

*Affirmed.*

CIKLIN and KUNTZ, JJ., concur.

\*      \*      \*

*Not final until disposition of timely filed motion for rehearing.*