554 So.2d 535 (1989)
ST. JOHNS COUNTY, Florida, Etc. and David Bruner, Petitioners,
v.
W. Conway OWINGS, Respondent.
No. 89-557.
District Court of Appeal of Florida, Fifth District.
November 16, 1989.
*536 James G. Sisco, St. Augustine, for petitioner, St. Johns County.
Geoffrey B. Dobson, St. Augustine, for petitioner, David Bruner.
George M. McClure, of McClure and Whiteman, St. Augustine, for respondent.
DANIEL, Chief Judge.
Petitioners, St. Johns County and David Bruner, seek review by petition for writ of certiorari of a circuit court order quashing the county's denial of a rezoning request of respondent land owner, W. Conway Owings and remanding the action to the county for rezoning to an appropriate commercial classification. Because of the limited scope of review in such matters, we are constrained to deny the petition for writ of certiorari.
Since 1973, the property in question has been zoned for multi-family residential use. The property is bounded on the north, west and east by commercially zoned property. South of the property is single family residential zoning. In 1985, the present owner's agent applied to have the property rezoned to a Planned Special Development to allow the building of a seventy-seven unit hotel-condominium and a shopping arcade. That request was denied in 1986, and no appeal was taken. Subsequently, in 1987, the owner filed a second rezoning application to have the property zoned for commercial general use or such other commercial classification as would be appropriate. The planning and zoning board recommended denial of the request because it determined that residential zoning was consistent with the Comprehensive Plan and compatible with the prevailing land uses. The plan provides for continuation of the status quo in the area, with development to continue along the same lines as on record  a somewhat ambiguous direction. Under the plan, commercial facilities are to be arranged to maximize accessibility, compliment traffic circulation and insure compatibility with adjacent property. The plan also states that commercial activity is to be restricted to the Poplar Avenue area. Poplar Avenue is the street one block north of the property in question. After considering all the evidence presented, the County Commission adopted the board's recommendation and denied the application for rezoning.
The circuit court, sitting in its appellate capacity, reviewed the County Commission's decision and found that the rezoning application was not barred by administrative *537 res judicata because of the 1985 request and that the Comprehensive Plan could reasonably be interpreted to allow for commercial zoning in the area in question. Finally, the court concluded that denial of the rezoning application, where the property was surrounded by commercial zoning on all but one side, was not reasonable, holding that the issue was not fairly debatable and the record was devoid of competent substantial evidence to support the denial.
As recently emphasized by the Florida Supreme Court in Education Development Center, Inc. v. City of West Palm Beach Zoning Board of Appeals, 541 So.2d 106 (Fla. 1989), a district court of appeal plays a very limited role in reviewing a circuit court's action in a zoning dispute such as this. Only the circuit court can review whether the judgment of the zoning authority is supported by competent substantial evidence. The district court of appeal merely determines whether the circuit court afforded due process and applied the correct law. See also City of Deerfield Beach v. Vaillant, 419 So.2d 624 (Fla. 1982). As the court in Education Development Center noted, a district court of appeal may not quash a circuit court's decision because it disagrees with the circuit court's evaluation of the evidence.
In this case, the circuit court applied the correct law in determining that administrative res judicata did not bar the owner's second rezoning application. See Thomson v. Department of Environmental Regulation, 511 So.2d 989 (Fla. 1987) (res judicata bars a second administrative application only if it is not supported by new facts, changed conditions, or additional submissions); City of Miami Beach v. Prevatt, 97 So.2d 473 (Fla. 1957) (res judicata should be applied cautiously in zoning matters); Coral Reef Nurseries, Inc. v. Babcock, 410 So.2d 648 (Fla. 3rd DCA 1982) (doctrine of res judicata should be liberally construed in favor of applicant for zoning change). In fact, res judicata was not listed as a reason for the denial of the application by the county.
The circuit court also applied the correct law where it determined that the zoning change must comply with the Florida Local Government Comprehensive Planning and Land Regulation Act[1] which requires that all development be consistent with the applicable comprehensive plan. The court weighed the opinion of the planning and zoning board that the small tract in question could not be zoned commercial without violating the plan, against the fact that the surrounding property on three sides was zoned for commercial use without violating the plan, as well as the opinion of an expert planner that the change would be consistent with the plan, and determined that the plan would not be violated by allowing the requested change. Again, this court cannot reweigh the evidence or substitute its judgment for that of the circuit court.
Finally, in applying the fairly debatable standard to determine whether the county commission's decision was reasonable, the circuit court utilized the correct standard of law. See, e.g., Palm Beach County v. Tinnerman, 517 So.2d 699 (Fla. 4th DCA 1987), rev. denied, 528 So.2d 1183 (Fla. 1988) (fairly debatable standard applies in reviewing denial of rezoning). Again, the circuit court's weighing of the evidence is not subject to review by this court, as long as the correct standard of law has been applied. Regardless of whether this court would have decided the issues before the circuit court differently, a full de novo review of the county's decision by this court is not authorized, as Education Development Center and City of Deerfield Beach v. Vaillant make clear. Although as Justice McDonald suggested in his dissent to Education Development Center, the narrow scope of review allowed the district court of appeal may clothe the trial judge with "the powers of absolute czar in zoning matters", 541 So.2d at 109, another full review would render meaningless the circuit court's action.
*538 Accordingly, as the circuit court applied the correct law in this case, the petition for writ of certiorari is DENIED.
DAUKSCH, J., concurs.
SHARP, J., dissents with opinion.
SHARP, Judge, dissenting.

The circuit court reviewed by writ of certiorari a decision of the Board of County Commissioners of St. Johns County which denied the landowner's (Owings') application to change the zoning on undeveloped land in Vilano Beach from RG-2(B) (multi-family) to CG-B (commercial general) or another appropriate commercial zoning category. The circuit court ruled that the Commission must grant Owings' application for "an appropriate commercial zoning classification" for three reasons:
(1) Owings' prior application to rezone the same property in 1985 to commercial P.S.D. (Planned Special District), which was denied and not appealed, should be given no res judicata effect in this proceeding;
(2) The requested CG-B zoning is consistent with St. Johns' comprehensive plan; and
(3) The denial of the requested zoning was not fairly debatable because the record before the Commission was "devoid of substantial, competent evidence to support the Commission's decision."
I would quash the lower court's ruling on all three grounds, although I recognize that the third ground may be unreviewable by us at the district court level, in light of Education Development Center, Inc. v. *539 City of West Palm Beach Zoning Board of Appeals, 541 So.2d 106 (Fla. 1989).
The property involved in this case consists of approximately two and one-half acres. (See Map.) It is a long, skinny, triangular piece of land, sometimes referred to as the Point on Vilano Beach. One of its long sides fronts on Vilano Road, and at least nine of its two-tiered fifty platted lots face A1A at the ninety degree turn where A1A goes north after the bridge. Across Vilano Road, north of the property, all of the one-tier of lots are zoned commercial from the bridge to the ocean. Similarly, except for the Point, the lots on the south side of Vilano Road are also zoned commercial from the bridge to the ocean, as well as a few properties on Anamha Drive, which runs south from the Point, parallel with the ocean.
However, immediately to the south of the Point property is an extensive single-family residential. One row of homes on Ferrol Street would be directly adjacent to any commercial development on the Point's southernmost tier of lots, and other single-family lots would directly face it across Ferrol Street. Owings' application for commercial zoning included no conditions or provisions to buffer the single-family district from future commercial development on the Point.
Owings purchased the Point property in 1977. It was then zoned multifamily residential at the prior owner's request when zoning was first adopted in Vilano Beach, in the early 1970's. The other properties facing Vilano Road were zoned commercial at the inception of the zoning ordinances, or have since been changed to commercial. Most of the businesses are small. The property immediately to the west of the Point is zoned multifamily and one commercial piece is used downstairs as a shop and upstairs as a residence. Very little has changed in the neighborhood in the last five years, except that families are beginning to build larger, single-family homes in the vicinity.
In 1985, a contract buyer for the Point, with Owings' consent, applied to rezone it from multifamily to a commercial Planned Special District. This file was made part of the record in the current proceedings. The proposed development included seventy or more condominium units, a hotel, and a shopping arcade. The present RG-2 zoning only permits the construction of thirty-eight multifamily units. The 1985 zoning application was denied because:
(1) there were unresolved drainage problems;
(2) traffic circulation and crowding problems;
(3) the proposed zoning greatly exceeded the density and level of transportation activity proper under current zoning; and non-compliance with the County's Comprehensive Plan;
(4) fire protection problems.
No further review of this zoning proceeding was sought.
In 1987, the present zoning change application was filed. Owings made no effort to show any change of conditions, facts, or development in the area since the prior application was denied. The planning and zoning staff recommended this application be denied because the proposed commercial zoning was inconsistent with the County's Comprehensive Plan and the actual use patterns in the neighborhood. Other reasons for denying this application were traffic and safety concerns, increase in an already abundant inventory of commercial property in the area, and unlimited structural height problems.[1] The Planning and Zoning Board adopted the staff's recommendations.
At the county commission level, the staff also recommended against the zoning change for the same reasons. The report noted that most of the nearby structures (closest to the Point) are residential, and of moderate height. The requested commercial category would have an unlimited height possibility and could result in a use *540 much more intensive than multifamily. It also noted the fire department's concern with buildings over thirty-five feet in height because of low water pressure in the fire hydrants nearby, drainage problems, and traffic circulation problems.
At the 1988 county commission hearing on the 1987 zoning application, numerous witnesses appeared and spoke on both sides of the controversy. Owings testified he had tried in 1983 to market thirty-eight condominium units on the property, without any success. He felt that because the Point is surrounded by commercial zoning on three sides, it would not be useful for any kind of residential use. However, he presented no evidence that he had tried, or could not sell the Point property with its present zoning at a fair price, and he admitted he could put thirty-eight multifamily units on the property with its present zoning.
Owings also presented Fleet, a land use planner. She testified that because of the heavy traffic on A1A, residential use of those lots facing the busy intersection where A1A turns north was not desirable, and that "a good zoning practice would be to change it to a Commercial property." But she agreed the requested rezoning would create lack of buffer problems for the single-family residences adjacent and immediately south of the Point. There would be no separation between the homes and the Point.
Various homeowners in the neighborhood testified against the rezoning, and one of them, Bruner, submitted extensive maps, studies and reports. They described the hardships which were anticipated to result, if the rezoning were granted. Commercial development would intrude up against single-family residences, without any buffer or protection. The subdivision's residential traffic which exits via Ferroll Road, would be severely impacted by intensive commercial use of the Point property.
Other residents, as well as the county staff reports, claimed that the requested change of zoning is contrary to the County's Comprehensive Plan. One witness testified that in 1984 when hearings were held on the plan for this area of Vilano Beach, the consensus was that they would have to live with the grandfathered-in commercial development already there, but more would not be encouraged. At the time Owings bought the Point, small restaurants and a motel on Vilano Beach were in place and no changes have occurred since then. Rather, the plan for that area was to encourage construction of single-family residences, and even to consider down-zoning multifamily residential zoning. The St. Johns County Commission apparently agreed with the opponents' position, because it unanimously rejected Owings' zoning application.

I. RES JUDICATA
The circuit court ruled that the doctrine of res judicata was not applicable in this proceeding to estop or foreclose any issues against Owings, because the 1985 zoning application for a Planned Special District was different from the current application for commercial general zoning on the Point property. The Planned Special Development zoning requested in 1985 is not defined by the applicable zoning ordinance as "commercial," but clearly Owings sought permission to almost double the permitted multifamily units permitted on the property, and he sought to combine them with high density commercial use  a hotel and shopping arcade. This 1985 application was denied because of the same problems involved with the 1987 application, as found and pointed out by the county commission and its staff: drainage; impairment of traffic circulation in the area due to the projected increased use of the Point property; intrusion of commercial use into an established residential area; and the fact that such increase was not in compliance with the St. Johns Comprehensive Plan.
Res Judicata is firmly entrenched as a part of Florida's zoning and administrative law, although it must be cautiously applied in zoning matters. Coral Reef Nurseries, Inc. v. Babcock Co., 410 So.2d 648 (Fla. 3d DCA 1982). In Coral Reef, there were substantial and material changes in the two zoning applications, and there had been *541 significant physical changes in the surrounding area in the time between the two applications. In addition, many of the expected problems created by the anticipated adverse impact of the first requested development had been addressed and were sought to be remedied or ameliorated in the second application.
In this case, Owings made no showing that any changes had occurred in the area near the Point property, since denial of the 1985 zoning application. Further, Owings made no effort in the 1987 application to address any of the reasons why the Commission denied the 1985 application. He sought a general commercial zoning which potentially would permit construction of commercial developments even larger and resulting in more intensive use than the project planned in 1985. No conditions or ameliorating plans were offered by Owings to buffer the impact of such a commercial development on the adjacent residential area.
The court in Coral Reef, said:

Res judicata applies unless it can be shown that since the earlier ruling there has been a substantial change of circumstances relating to the subject matter with which the ruling was concerned, sufficient to prompt a different or contrary determination.
In that case, the zoning authority determined that res judicata did not apply because of physical changes in the vicinity and changes in the application which addressed the zoning authority's prior concerns. The trial court and the district court of appeal sustained the zoning authority's determination. Such a determination is "primarily within the province of the administrative body considering the matter in question, and that body's determination may only be overturned upon a showing of a complete absence of any justification therefor." Coral Reef at 655.
In Thomson v. Department of Environment Regulation, 511 So.2d 989 (Fla. 1987), the court enunciated the same rule of law:
The proper rule in a case where a previous permit application has been denied is that res judicata will apply only if the second application is not supported by new facts, changed conditions, or by additional submissions by the applicant.
Thomson at 991. Since the second application in Thomson addressed environmental objections relied upon in denying the first permit, and a new environmental study had been made, the court held res judicata did not apply. It quashed the First District's ruling that applied res judicata.
In my view, the present case is similar to the zoning matter in Hasam Realty Corp. v. Dade County, 486 So.2d 9 (Fla. 3d DCA), rev. dismissed, 492 So.2d 1332 (Fla. 1986). There, the zoning commission denied the rezoning application and such denial was affirmed by both the trial court and the District Court. The Third District held that the zoning commission could have properly found, based on the record, "[t]hat there were no significant differences as to the vital issues of density, traffic and the like, between the instant application and one which had been previously rejected so that the requested relief was barred by the doctrine of administrative res judicata."
Although Owings' 1985 and 1987 zoning applications are not identical, they pose the same problems  traffic congestion, adverse impact on the single-family residential district adjoining to the south, and violation of the county's Comprehensive Plan, as understood by the county commissioners. Owings failed to show any changes in the physical aspects or conditions of the neighborhood since the 1985 application was denied, nor did his submission in 1987 address those concerns which caused the Commission to deny the 1985 application.
Based on this record, the zoning commission acted within its discretion in denying the 1987 zoning application. It cannot be fairly said of this proceeding that the county commission acted with complete absence of justification in applying administrative res judicata to Owings' 1987 application. The trial court did not make such a finding in this case. It simply held that res judicata did not apply.
I conclude the trial court therefore erred by failing to apply the correct rule of law. *542 Absent a record which overwhelmingly shows a change of circumstances or facts, and material differences between the two rezoning applications, it cannot be said that the county commission abused its discretion by denying the application based on res judicata. The Commission's decision is entitled to a presumption of correctness and should not be overturned unless there is no basis to sustain it.[2] That is not the situation in this case.

II. COMPLIANCE WITH COUNTY'S COMPREHENSIVE PLAN
The trial court ruled that the requested rezoning of the Point property to CG-B was consistent with St. Johns County's Comprehensive Plan. This view is contrary to the county staff reports and recommendations in both the 1985 and 1987 rezoning proceedings. It is also contrary to the decisions of the county commission which denied both zoning applications.
Compliance with the County's Comprehensive Plan is a relatively new wrinkle in Florida's law of zoning. See Battaglia Fruit Co. v. City of Maitland, 530 So.2d 940, 950 (Fla. 5th DCA 1988) (Sharp, W., J. dissenting). Rezoning now must be consistent with the County's Comprehensive Plan or it is unlawful.[3] Denial of a rezoning application which is inconsistent with a comprehensive plan adopted by a county or city alone is a sufficient basis to deny the requested rezoning. Machado v. Musgrove, 519 So.2d 629 (Fla. 3d DCA 1987), rev. denied, 529 So.2d 694 (Fla. 1988); Sengra Corp. v. Metropolitan Dade County, 476 So.2d 298 (Fla. 3d DCA 1985); City of Cape Canaveral v. Mosher, 467 So.2d 468 (Fla. 5th DCA 1985) (Cowart, J., concurring). Thus, the proper interpretation of St. Johns County's Comprehensive Plan was a crucial issue in this case.
The trial court read the Comprehensive Plan and simply arrived at its own interpretation, based on the evidence in the record. In order to do so, however, it had to ignore the contrary interpretation given to the plan by the zoning agency and staff.
In point of fact, the Comprehensive Plan as applied to this Point property is somewhat ambiguous. It provides:
The planning recommendation for the area is one which supports the status-quo  let development continue along the line already on record in terms of its subdivisions and zoning districts... .
Finally, some consideration should be given to reconsidering the appropriateness of areas zoned for high density multifamily residential use. Virtually all of the development presently in evidence is single family character. The continuation of this trend is recommended. Commercial activity should also be restricted to the Poplar Avenue segment of State Road A-1-A rather than injudiciously developed along the North/South segments of State Road A-1-A.
The Plan also noted that due to lack of earlier foresight and planning, and a large number of small-lot owners, the area is not one which could now be redesigned to fit a modern zoning scheme.
The Plan permits existing commercial development along the "Poplar Avenue segment" of Vilano Road, but expresses an intent to confine it to that area. Owings, and the trial court which agreed with him, reasoned that because Poplar Avenue runs east to west, just north of Vilano, ending in A1A after it turns north in front of the Point property, that commercial zoning is appropriate for all of the property on Vilano Road from the bridge to the ocean. This would include the Point property, although most of it is east of the 90 degree curve of A1A.
The County Commission and staff, as well as witnesses testifying at the zoning hearing, take the opposing view that the "Poplar Avenue segment" reference was intended to limit commercial zoning on Vilano to that part of Vilano east of the bridge but only up to A1A's 90 degree curve north. That would exclude most of the Point property, which lies east of that intersection and runs almost to the ocean. *543 Such a view is reasonable and rational, given the plan's stated intent to preserve the single-family residential character of the area. As pointed out repeatedly by staff reports and testimony at the zoning hearing, the multifamily zoning on the Point property is viewed as an essential buffer for the residential areas to the immediate south.
If a Comprehensive Plan or zoning ordinance is capable of being interpreted in two or more different ways, it is error for a court not to give the zoning authorities' interpretation deference over its own view. The interpretation of zoning ordinances or comprehensive plans are both matters within the province and expertise of the zoning authority, and reasonable interpretations accorded them by the zoning authority should not be interfered with by the courts,[4] unless they are clearly unauthorized or erroneous.[5] As the New Jersey Supreme Court said in Bogert v. Washington Tp., 25 N.J. 57, 135 A.2d 1, 3 (1957).
Zoning involves more than looking at a map and drawing what appears to be logical or natural boundaries. It is more than an exercise in plane geometry. The mere observation of a plat map, tax map, or zoning map will lead to misleading abstract deduction and error in the application of the above stated principles... . [citations omitted]
There are many considerations which may validly apply to influence the way property in a district may be classified. Important among them are the prior existing uses in the district, the natural contours and topographical features of the land, in some instances the geological strata of the land with particular relation to the effect of drainage and seepage upon water and sewage problems.
In summary, the trial court erred here in failing to apply the rule of law which gives deference to a zoning authority's interpretation of its own ordinances or zoning plan and which places on the party seeking a zoning change the burden of proving that the requested zoning for the property will conform to the plan and its elements. Alachua County v. Eagle's Nest Farms, Inc., 473 So.2d 257 (Fla. 1st DCA 1985), rev. denied, 486 So.2d 595 (Fla. 1986). If the zoning authority's interpretation is reasonable and is not palpably erroneous or arbitrary, it should be accepted by reviewing courts. See Norwood-Norland Homeowners Association, Inc. v. Dade County, 511 So.2d 1009 (Fla. 3d DCA 1987), rev. denied, 520 So.2d 585 (Fla. 1988); City of St. Petersburg v. Cardinal Industries Development Corp., 493 So.2d 535 (Fla.2d DCA 1986); Marell v. Hardy, 450 So.2d 1207 (Fla. 4th DCA 1984); Town of Mangonia Park v. Palm Beach Oil, Inc., 436 So.2d 1138 (Fla. 4th DCA 1983), rev. denied, 450 So.2d 487 (Fla. 1984). A court should not simply arrive at its own interpretation on the basis of reason and logic as it perceives it to be. Since the trial court did not find that the Commission's interpretation of the Plan was clearly unauthorized or arbitrary, it should have found that the rezoning application in this case was contrary to the county's Comprehensive Plan. Metropolitan Dade County v. Fuller, 515 So.2d 1312 (Fla. 3d DCA 1987). That finding alone would have sufficed as a valid reason for the Commission's denial of Owings' 1987 rezoning application. Hillsborough County v. Putney, 495 So.2d 224 (Fla.2d DCA 1986).

III. "FAIRLY DEBATABLE"
The trial court also based its decision on the well-trodden legal formula that the Commission's refusal to rezone to commercial was not "fairly debatable." The court recited facts from the record which favored the rezoning: the dangerous and heavily travelled A1A curve; commercial zoning fronting Vilano Road, Owings' unsuccessful effort to develop condominiums on the property in the early 1980's; and Owings' expert witness' testimony. It said: "Except for single family zoning abutting the south line of the subject property and the multifamily zoning abutting two-thirds of the Petitioner's west line, the subject is *544 virtually surrounded by property commercially zoned."
Reading the appealed-from judgment alone, without benefit of the record, it appears this case falls squarely in the slot of reverse spot zoning, which is a well-accepted legal basis to overturn refusals by zoning authorities to rezone. See City Commission of the City of Miami v. Woodlawn Park Cemetery Co., 553 So.2d 1227 (Fla. 3d DCA 1989). As described by our sister court, such landowners find their property has become "[a] veritable zoning island or zoning peninsula in a surrounding sea of contrary zoning classification." It thus becomes a fortiori unreasonable and arbitrary, not to grant the rezoning requested.
However, what if the property is not actually a peninsula or an island, but the leading edge of a block of different zoning, with which it is compatible? And further, what if there are in fact, based on the record, valid reasons to support the zoning authority's decision not to rezone? In an earlier day, we would have simply said the trial court erred because it re-weighed evidence, re-determined credibility of witnesses, made fact findings contrary to those of the fact-finder, and failed to see that the zoning authority's decision, although perhaps controversial, was supported by some substantial and competent evidence. See Department of Highway Safety & Motor Vehicles Division of Drivers Licenses v. Allen, 539 So.2d 20 (Fla. 5th DCA 1989); Board of County Commissioners of Pinellas County v. City of Clearwater, 440 So.2d 497 (Fla.2d DCA 1983); Palm Beach County v. Tinnerman, 517 So.2d 699 (Fla. 4th DCA 1987), rev. denied, 528 So.2d 1183 (Fla. 1988); City of Hollywood v. South Broward Hospital District 504 So.2d 1308 (Fla. 4th DCA), rev. dismissed, 513 So.2d 1063 (Fla. 1987); Anderson American Law of Zoning, Ch. 27, §§ 27-29. If there are substantial grounds to support the zoning body's decision, the courts must affirm and not substitute their own views for that of the zoning body, whose special legislative task it is to make zoning decisions. Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); City of Miami v. Lachman, 71 So.2d 148 (Fla. 1953), appeal dismissed, 348 U.S. 906, 75 S.Ct. 292, 99 L.Ed. 711 (1955); Tinnerman; City of Tampa v. Madison, 508 So.2d 754 (Fla. 4th DCA 1987).
In making such a determination on review by certiorari, the scope of review by the first court and the second reviewing court is essentially similar. Anderson, American Law of Zoning, Ch. 27:27-34. Both have only the record made at the zoning level before them for review purposes. And in order to determine whether the fairly debatable rule was correctly applied by the trial level or first reviewing court, it is necessary for the second reviewing court to read the record.
Recently the Florida Supreme Court has cast doubt upon the ability of the second reviewing court to look beyond the flat recitation by the first court that the zoning authority's decision is not "fairly debatable." See Education Development Center, Inc. v. City of West Palm Beach Zoning Board of Appeals, 541 So.2d 106 (Fla. 1989); and dissent by Justice McDonald, supra. However, in Florida there has always been a right to at least one review or appeal from a court decision. An agency or zoning body is not a court. Thus, there really are not two sets of reviewing courts in these types of cases. See Graham v. Estuary Properties, Inc., 399 So.2d 1374 (Fla. 1981), cert. denied, 454 U.S. 1083, 102 S.Ct. 640, 70 L.Ed.2d 618 (1981). The only court decision in such cases is that of the circuit court. The only appeal of a court decision comes at the district court level. If, indeed, meaningful review of the initial court's decision on zoning is extinguished by Education Development Center, this is an area in need of legislative remedy.[6]
Based on this record, it cannot be said there was no competent, substantial evidence *545 to support the zoning commission's decision. Therefore, I conclude that the trial court erred in holding that the decision not to rezone was not fairly debatable. As discussed above, res judicata and the County's Comprehensive Plan clearly afford two additional, solid grounds to deny the rezoning application, aside from the fairly debateable rule. See Thomson v. Village of Tequesta Board of Adjustment, 546 So.2d 457 (Fla. 4th DCA 1989). Owings made no showing in this proceeding that he was deprived of a reasonable use of the land, or that the multifamily zoning was so inappropriate as to be confiscatory or a disguised taking. That indeed might be an argument for another day. Graham. However, it was neither argued nor proven in this proceeding.
I would reverse.
NOTES
[1] Section 163.3161, et seq., Florida Statutes (1987).
[1] These reasons are a combination of the zoning board's considerations and the Resolution. The Resolution only makes reference to traffic flow.
[2] Coral Reef Nurseries, Inc. v. Babcock Co., 410 So.2d 648, 654 (Fla. 3d DCA 1982).
[3] § § § 163.3161; 163.3194; 163.3202, Fla. Stat. (1987), effective October 1, 1985.
[4] City of Deland v. Lowe, 544 So.2d 1165 (Fla. 5th DCA 1989).
[5] P.W. Ventures, Inc. v. Nichols, 533 So.2d 281 (Fla. 1988).
[6] See Manatee County v. Kuehnel, 542 So.2d 1356 (Fla.2d DCA) rev. denied, 548 So.2d 663 (Fla. 1989). Too great an intrusion by the courts into the legislative process of zoning creates constitutional problems. See also Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926).