602 So.2d 568 (1992)
ORANGE COUNTY, Florida, etc., Petitioner,
v.
Mark LUST, Respondent.
No. 90-696.
District Court of Appeal of Florida, Fifth District.
May 8, 1992.
Rehearing Denied August 7, 1992.
*569 Harry A. Stewart, County Atty., and Paul Chipok, Asst. County Atty., Orlando, for petitioner.
Kelvin L. Averbuch, Orlando, for respondent.

ON MOTION FOR REHEARING EN BANC
GRIFFIN, Judge.
A majority of this court has voted to grant respondent's motion to consider this case en banc. Having done so, we adhere to our decision to grant the writ and quash the order under review; however, we withdraw our opinion issued November 29, 1990 and substitute the following opinions in its stead.
Petitioner, Orange County, seeks certiorari review of a circuit court order quashing the County's denial of the respondent landowner's rezoning application. The parcel in question is a 2,100 square foot triangular[1] remnant of a larger parcel, zoned A-2 (agricultural), that was the subject of an eminent domain proceeding in 1957 to provide for the expansion of the right-of-way of U.S. Highway 441. Lust purchased this small parcel through a tax deed in 1986 and sought rezoning to C-3 (heavy commercial) to allow erection of a billboard. Lust's first rezoning application was denied in 1987, and he filed a second application in 1989.
The staff of the Orange County Zoning Department recommended denial of the second rezoning request on several grounds, including: (1) that the current zoning for the land surrounding this parcel is "agricultural" or "single family residential";[2] (2) that proposed rezoning would permit a commercial and/or industrial intrusion into an area designated rural residential according to the County's Growth Management Plan; (3) that it would set a precedent for additional heavy commercial use or strip commercialization along U.S. Highway 441; (4) that there were insufficient services available to accommodate an increase in land use intensity on the site; and (5) that approval of this request would permit land uses that are inconsistent and incompatible with the character or nature of the area in that this parcel would be the only C-3 zoning in the area. The County's Planning and Zoning Commission agreed with the staff recommendation of denial.
At the hearing on appeal before the Orange County Board of Commissioners (the "Board"), the Board voted unanimously to deny Lust's rezoning request, accepting the Planning and Zoning Commission's recommendation. Lust challenged the denial of his rezoning application through a petition for writ of certiorari in the circuit court. The circuit court granted the petition for writ of certiorari and remanded the cause to the Board with instructions to grant the zoning change to permit erection of a billboard on Lust's property. The stated basis for the trial court's decision was that the refusal to rezone this land for a billboard was "arbitrary, unreasonable and confiscatory." We quash the lower court's decision on certiorari because the lower court failed to apply the correct law in reviewing the Board's decision. The trial court incorrectly identified, and failed to apply, the standard of review he was bound to utilize in reviewing the decision of the Board.[3]
While it may be correct that a zoning authority's decision to deny rezoning is subject to judicial intervention if the decision *570 is arbitrary, unreasonable or confiscatory, it is certainly clear that the circuit court does not get to decide that issue in the first instance. Broward County v. Capeletti Bros., Inc., 375 So.2d 313, 315 (Fla. 4th DCA 1979), cert. denied, 385 So.2d 755 (Fla. 1980). "Arbitrary, unreasonable and confiscatory" is the issue, not the standard of review. "Because zoning or rezoning is the function of the appropriate zoning authority and not the courts, the circuit court [is] not empowered to disapprove the findings of the Board unless the record [is] devoid of substantial competent evidence to support the Board's decision." Skaggs-Albertson's v. ABC Liquors, Inc., 363 So.2d 1082 (Fla. 1978).
As this court earlier observed, the standard of review in zoning cases in this state has become somewhat blurred:[4]
The DeGroot [v. Sheffield, 95 So.2d 912, 916 (Fla. 1957)] "competent substantial evidence" standard of review of quasi-judicial action effectively provides the same standard the "fairly debatable" test provides for review of legislative municipal zoning action: For the action to be sustained, it must be reasonably based in the evidence presented.
* * * * * *
By whatever name it is called, the task of the court reviewing the zoning variance decision is to insure that the authority's decision is based on evidence a reasonable mind would accept to support a conclusion.
Town of Indialantic v. Nance, 400 So.2d 37, 40 (Fla. 5th DCA 1981), approved, 419 So.2d 1041 (Fla. 1982). See also City of South Miami v. Meenan, 581 So.2d 228 (Fla. 3d DCA 1991); St. Johns County v. Owings, 554 So.2d 535 (Fla. 5th DCA 1989), rev. denied, 564 So.2d 488 (Fla. 1990); Capeletti, 375 So.2d at 315. A standard of review supplies the reviewing court with the guidelines for evaluating the quality and quantity of evidence that will make the zoning authority's decision irreversible by the reviewing court. Indialantic, 400 So.2d at 39-40. Here the trial court reviewed the record and decided it thought the denial of rezoning was arbitrary, unreasonable and confiscatory but did not perform its function, which was to determine whether the record contained evidence a reasonable mind would accept to support the Board's conclusion. The trial court's function was to search the record to see if any competent substantial evidence supported the Board's decision. Educ. Dev. Ctr., Inc. v. City of West Palm Beach Zoning Bd. of Appeals, 541 So.2d 106, 108 (Fla. 1989); Battaglia Fruit Co. v. City of Maitland, 530 So.2d 940, 944 (Fla. 5th DCA), appeal dismissed, 537 So.2d 568 (Fla. 1988). Here the trial court did the opposite.
In its order, the factual "Background" the trial court recited to support its ruling in favor of Lust was verbatim the description of the surrounding property as contained in the brief Lust filed with the Board, but the trial court ignored entirely the County's evidence, which was also undisputed in the record:
Zoning adjacent to the subject property is A-1 (1956/1957) to the north and east, and R-1A (1979) to the south and west (across U.S. 441).
The agricultural property is vacant. The R-1A across from this site contains a single family residence. There is C-1 to the north and west of this site. Most of the C-1 is vacant, was approved prior to the adoption of the Growth Management Policy (1960/1979), and provides insufficient justification for this rezoning request.
The other commercial uses in the area are south along U.S. 441. On the westerly *571 side is a commercial building housing a truck brokerage and pool business. This is on R-1A zoned property and the zoning records identify it as a nonconforming retail business. Also south of the subject property is a used car lot. Zoning shows this as zoned A-1. However, there is no established nonconforming use identified by the zoning records. Further investigation of the zoning status of this car lot is under way. The general area of this rezoning is vacant. There is limited commercial development. Approval of C-3 would allow the introduction of heavy commercial zoning in a rural area. Approval of C-3 would also establish the precedent for additional commercial zoning stripped along U.S. 441.
* * * * * *
The Growth Management Policy Future Land Use Designation is Rural Residential (1 DU/2 Acres) in the Rural Service Area. This request is inconsistent with that recommendation. Commercial Policy 1.0.3 states, "... commercial development shall be consistent with the Cluster Development Pattern." To establish free-standing heavy commercial in the Rural Service Area does not meet the intent of the Cluster Development Pattern.
Commercial Policy 5.1.2 states, "roadway commercial activities should be encouraged to infill along existing arterials." The requested C-3 is not an infill development. It would set the precedent for additional commercial zoning along U.S. 441, resulting in strip commercialization. This is contrary to the infill concept.
Commercial Policy 4.0.1 requires the availability of appropriate services for heavy commercial uses. The C-3 allows uses such that central sewer and water be required. Sewer and water are not available at this location.
The staff recommendation for denial of rezoning was also part of the record:
1. The request is inconsistent with the Growth Management Policy Future Land Use Designation of Rural Residential (1 DU/2 Acres) in the Rural Service Area.
2. The C-3 District would allow uses that are incompatible with the existing uses and zonings in the area.
3. The request represents spot zoning.
4. Approval of C-3 would establish the precedent for stripping commercial zoning along U.S. 441.
5. Approval of C-3 would be contrary to the Cluster Development Pattern.
6. There are inadequate services available to meet the needs of uses allowed in the C-3 District.
7. The site does not meet the site and building requirements for the C-3 District.[5]
In the present case, it is plain that the record contains competent, substantial evidence that would support the Board's refusal to rezone this parcel for erection of a billboard. The undisputed fact that the proposed rezoning is inconsistent with the County's Growth Management Plan is strong evidence supporting the Board's decision. Sengra Corp. v. Metropolitan Dade County, 476 So.2d 298 (Fla. 3d DCA 1985). The very fact that the entire County Commission, County Staff, and Zoning Board concluded this zoning change was ill-advised further lends support to the conclusion that the Board's decision was fairly debatable. Capeletti, 375 So.2d at 316; Miles v. Dade County By Bd. of County Comm'rs, 260 So.2d 553, 555 (Fla. 3d DCA 1972).
The trial court reasoned that since this fragment of land is too small to profitably use as presently zoned (agricultural), petitioner must be permitted to put a billboard on it. Not to let him erect a billboard would be arbitrary, unreasonable and confiscatory. To support this conclusion, the trial court relied in its order on an exchange at the hearing before the Board where, in response to counsel's question, "[P]erhaps you could tell us what he could use it for," one of the commissioners quipped, "Probably none." However, during *572 the hearing, the same commissioner later pointed out that the agricultural uses (citrus, gardening) that governed the property when Lust purchased it are still available to Lust. The dearth of practical uses is due to the parcel's size, not its zoning. Even if Lust can find no other profitable use for the property other than as a billboard site, maintenance of present zoning which prevents erection of a billboard does not necessarily make the zoning confiscatory and does not invalidate the county's decision to deny rezoning. See Namon v. Dep't of Envtl. Reg., 558 So.2d 504, 505 (Fla. 3d DCA), rev. denied, 564 So.2d 1086 (Fla. 1990).
What really occurred in this case was that the circuit court simply disagreed with the Board. The trial court's lengthy written order never mentions either the "not fairly debatable" or the "substantial competent evidence" standard, and it is obvious from a review of the Order that the trial court was passing on the merits of the Board's refusal to rezone, not reviewing the record to see whether there was any evidentiary support for the Board's decision. In our view, the trial court's failure to sustain the Board's decision was error and the trial court's order should be quashed, as was done in the recent cases of City of Fort Lauderdale v. Multidyne Medical Waste Management, Inc., 567 So.2d 955 (Fla. 4th DCA 1990), rev. denied, 581 So.2d 165 (Fla. 1991) and Meenan. See also Indialantic, 400 So.2d 37.
In Owings, this court spoke of the very limited role a district court of appeal plays in reviewing a circuit court's action in a zoning dispute:
Only the circuit court can review whether the judgment of the zoning authority is supported by competent substantial evidence. The district court of appeal merely determines whether the circuit court afforded due process and applied the correct law. See also City of Deerfield Beach v. Vaillant, 419 So.2d 624 (Fla. 1982). As the court in Education Development Center noted, a district court of appeal may not quash a circuit court's decision because it disagrees with the circuit court's evaluation of the evidence.
Owings, 554 So.2d at 537. See also Educ. Dev. Ctr., 541 So.2d 106. Consistent with Education Development Center, we quash the circuit court's decision, not because we disagree with the circuit court's evaluation of the evidence, but because the trial court failed to perform its proper review function. The County's petition for writ of certiorari is therefore granted, and the circuit court's order granting Lust's petition for writ of certiorari is quashed.
WRIT GRANTED; ORDER QUASHED.
DAUKSCH, J., concurs.
HARRIS, J., concurs specially in result only, with opinion, with which COBB, J., concurs.
W. SHARP, J., concurs in result only, with opinion.
PETERSON and DIAMANTIS, JJ., concur in result only.
GOSHORN, C.J., and COWART, J., dissent without opinion.
HARRIS, Judge, concurring specially in result only:
The complexity of the problem presented by this case has caused some vacillation and considerable disagreement as to the court's role in reviewing zoning disputes. Were this a typical zoning case, I would agree with the majority that the owner has not proved  by any standard  that C-3 zoning is appropriate for his property; if this were a true inverse condemnation action brought by the appropriate party, I would agree with the owner that the county, by governmental action, has deprived him of all beneficial use of his property. But this is neither a typical zoning case nor a true inverse condemnation case.
This is not a typical zoning case because the owner is not seeking rezoning because of a change in the neighborhood, a change in the traffic pattern, or any other change in circumstances which would justify rezoning. The property owner does not contend that the zoning for the location is unreasonable. He contends merely that because he *573 has purchased a substandard lot (a 2100 square ft. triangular tract) at a tax sale and since that property can only be profitably used as a site for a billboard  he is entitled to either rezoning or inverse condemnation. Some see the issue as whether the trial court properly applied the "fairly debatable" standard of review; I find such standard inapplicable.
I am concerned that by focusing on the fairly debatable test, other problems and issues that might be impacted by the trial court's opinion may be overlooked.
This petition involves two interrelated, but independent, problems and concepts  inverse condemnation and rezoning. The respondent argues, and the trial court agreed, that the zoning was arbitrary because of the limited size of the property. Respondent does not contend, for example, that had he 10 acres the A-1 zoning would be confiscatory or that the "rural residential" (one dwelling unit per 2 acres) designation on the future land use map would be unreasonable.
He complains rather that it is because of the limited size of his property that he is denied a reasonable use. Since the only use he can imagine for such a small parcel is for a sign and since a sign is only permitted in a C-3 zone, he contends that he is entitled to C-3 zoning. To accept his position would be to permit owners to sell off substandard parcels which would require the county to grant otherwise inappropriate zoning or be subjected to expensive inverse condemnation suits.
Some urge that the issue of inverse condemnation is not properly before us and that we should be concerned only with whether the property should be zoned C-3. But that is not the way the case was presented either before the zoning officials or the lower court. Because I find that the two issues (rezoning and inverse condemnation) were inextricably intertwined below, I find them inseparable on this petition.
The landowner's requested remedy, when he took certiorari to the circuit court, was:
Mark Lust has applied to change the zoning of his property from agriculture to commercial for purpose of erecting a billboard sign. He argues that unless such a zoning change was granted, he would be deprived of all beneficial use of the property, since the property is too small to meet any other practical use. Furthermore, the denial of rezoning constitutes a taking for which compensation must be paid, and Mark Lust demands a hearing to determine the amount of this compensation. [Emphasis added.]
This sounds in inverse condemnation.
He concedes in his petition that it is not the zoning that deprives him of beneficial use of his land:
However, primarily due to its size and location, he cannot employ the property for any beneficial use. Setback requirements under any zoning classification precludes agricultural, residential and commercial use. [Emphasis added.]
In requiring the county to rezone the property, the trial court held:
In the instant case the existing use of the property to the landowner was "probably none" according to the Board. There was no evidence of other beneficial uses. The denial of rezoning was thus arbitrary, unreasonable and confiscatory. [Emphasis added.]
Because of the position taken by the parties and the analysis of the trial court, it is evident that the court found that the zoning was arbitrary and unreasonable only because at some point in time the beneficial use of the parcel had been confiscated from the owner.
The trial court's finding that the denial of rezoning confiscated the property is important for three reasons:
First, as indicated by his requested remedy, Lust was seeking damages because of the taking caused by the county's refusal to rezone. The court instead considered Lust's petition as seeking either a required change of zoning or damages for inverse condemnation. The court granted rezoning in order to avoid the county's having to pay damages. Permitting alternative theories to proceed (an appeal of the denial of rezoning and inverse condemnation) in the same *574 action was error. As this court held in Janson v. City of St. Augustine, 468 So.2d 329 (Fla. 5th DCA 1985):

Key Haven [Associated Enterprises, Inc. v. Board of Trustees, 427 So.2d 153 (Fla. 1983)] and Albrecht [v. State, 444 So.2d 8 (Fla. 1984)] dictate that the two remedies of appeal and inverse condemnation cannot be simultaneously pursued. Although a challenge to the administrative decision via appeal does not extinguish a suit for inverse condemnation at the conclusion of the appeal, Albrecht, a filing of an inverse condemnation suit forecloses a party from challenging the correctness of an administrative decision. Key Haven. [Emphasis added.]
Second, Lust has no right to seek inverse condemnation. Although the original owner may have had a right to compensation, this was a personal right  not transferable by general deed and certainly not transferred to a purchaser at a tax sale. A similar issue was before the court in Dep't. of Transp. v. Burnette, 384 So.2d 916 (Fla. 1st DCA 1980), in which the court stated:
Burnette, the subsequent purchaser and grantee, has no claim in inverse condemnation without assignment of his predecessors' claims, which are not shown here. [Citations omitted]. The reason for this rule is as stated by the Minnesota Supreme Court in Brooks Inv. Co. v. City of Bloomington, 305 Minn. 305, 315-16, 232 N.W.2d 911, 918 (1975):
The rationale behind this rule seems to be simple and logical. When the government interferes with a person's right to possession and enjoyment of his property to such an extent so as to create a "taking" in the constitutional sense, a right to compensation vests in the person owning the property at the time of such interference. This right has the status of property, is personal to the owner, and does not run with the land if he should subsequently transfer it without an assignment of such right. The theory is that when the government interferes with a person's property to such a substantial extent the owner has lost a part of his interest in the real property. Substituted for the property loss is the right to compensation. When the original owner conveys what remains of the realty, he does not transfer the right to compensation for the portion he has lost without a separate assignment of such right. If the rule were otherwise, the original owner of damaged property would suffer a loss and the purchaser of that property would receive a windfall. Presumably, the purchaser will pay the seller only for the real property interest that the seller possesses at the time of the sale and can transfer.
Third, Lust stands in the shoes of the former owner. It appears that the former owner was already compensated for this "taking." The county, in denying the rezoning, alluded to the fact that Lust's predecessor was probably compensated for the loss of the use of the property by the way of severance damages. Lust did not deny this at the rezoning hearing. He did respond to the issue, however, in his reply brief filed in the circuit court:
The county finally argues that if there was a taking, the owners were paid compensation in the form of severance damages. Here the county's argument falls completely flat. Severance damages may well have been paid for property actually taken, but since eminent domain law did not allow taking more land than was necessary for public purpose, this small section was not taken by the county in condemnation. Obviously the county would not pay damages for land which it did not take.
Lust, and perhaps the trial court, misconstrues the purpose of severance damages. It is precisely for the purpose of compensating for damages done to the property not taken.[1] If Lust's predecessor had *575 been compensated because the remainder had been rendered valueless when no profitable use remained for the property under its current zoning, he should not also be entitled to require a zoning change and thus obtain double recovery. Lust, who is on record notice of the prior condemnation action, should have no greater rights.
The trial court's decision would create a market for obtaining small, useless parcels remaining from condemnation actions (and for which severance damages have previously been paid) for the purpose of requiring either an undesirable zoning change or yet another condemnation award. Since these condemnation fragments undoubtedly exist all around the state, practically every county and city could be exposed to either undesirable zoning or expensive litigation.
This case should not be decided as though it were a true zoning case in which the property was submitted on its merits. Neither the county nor the circuit court was asked to change the zoning because the current zoning for that location was arbitrary or capricious; instead the county was asked to change the zoning in order to accommodate a substandard site and to avoid the consequence of the regulatory taking.[2] The "fairly debatable" standard of review does not apply to the issue in this case. Here we are concerned only with the issue of whether C-3 zoning[3] is required merely because the current zoning will not permit an economic use of the property because of its size. Although I believe that the previous condemnation constituted a "taking" of this remainder, the taking occurred earlier and compensation was either paid to or owed to Lust's predecessor. I would therefore answer in the negative.
This was an inverse condemnation claim presented in the guise of rezoning. The issue was confused and an inappropriate inverse condemnation remedy was entered in the form of a rezoning order. I agree that reversal is necessary.
COBB, J., concurs.
W. SHARP, Judge, concurring specially.
I agree with the result in this case but I disagree as to the proper standard of review for the trial court.
Since the subject property was zoned in accordance with the County's growth management plan, that fact alone should suffice to require the trial court to affirm the zoning authority's refusal to rezone. St. Johns County v. Owings, 554 So.2d 535, 538 (Fla. 5th DCA 1989), rev. denied, 564 So.2d 488 (Fla. 1990) (Sharp, W., J., dissenting). The county could not change the zoning without amending the comprehensive *576 plan which was not attempted in this case.[1]After a county has adopted a Growth Management Plan, it cannot be deviated from without amending the plan.
If a county has adopted a growth management plan, the proper standard of review for a court, in determining whether rezoning (without amending the plan) should be sustained, is whether there is competent and substantial evidence to support the rezoning as being consistent with the plan. Machado v. Musgrove, 519 So.2d 629 (Fla. 3d DCA 1987), rev. denied, 529 So.2d 693 (Fla. 1988). See also B.B. McCormick & Sons, Inc. v. City of Jacksonville, 559 So.2d 252 (Fla. 1st DCA 1990); Palm Beach County v. Allen Morris Co., 547 So.2d 690 (Fla. 4th DCA), rev. dismissed, 553 So.2d 1164 (Fla. 1989). This is a stricter standard than the "fairly debatable" one, which applies if no plan has been adopted, or if the plan is being amended, pursuant to Chapter 163. But neither standard has anything to do with inverse condemnation cases, which is not involved in this case.
In view of the obvious mass confusion at the appellate level (at least in the Fifth District) as to what standard of review the reviewing court should apply to a zoning case, I hope our Florida Supreme Court will take jurisdiction in an appropriate case and instruct us on these matters. We obviously need some help!
NOTES
[1] The triangle has legs measuring approximately 93 feet by 56 feet by 75 feet.
[2] Directly across the highway is a single family residence.
[3] Judge Harris is correct that the lower court also applied the wrong law by concluding that the limitations on appellant's uses of his property could support a court-ordered rezoning rather than a theoretical inverse condemnation claim. Like Judge Harris, we also conclude that appellant had no right to inverse condemnation; however, due to the procedural posture of the case (certiorari review of a rezoning denial) we are obliged to view the damages claim in the certiorari petition as surplusage.
[4] As colorfully explained in Miles v. Dade County By Board of County Comm'rs, 260 So.2d 553, 555 (Fla. 3d DCA 1972):

Questions involved here are whether the matter upon which the County Commission so acted was established by competent, substantial evidence to be fairly debatable, and, if so, whether there was competent substantial evidence to support the decision reached by the legislative body on that fairly debatable matter.
But see Bernard v. Town Council of Palm Beach, 569 So.2d 853 (Fla. 4th DCA 1990). See also David La Croix, The Applicability of Certiorari Review to Decisions on Rezoning, 65 Fla.B.J. 105 (June 1991).
[5] Thus, even if zoned C-3, Lust would have to obtain a variance to erect a billboard.
[1] § 73.10(2), Fla. Stat. (1959) [the date of the original eminent domain action:]

The amount of such compensation shall be the value of the property sought to be appropriated including the damages, if any, accruing to the untaken portion where less than the entire property is sought to be appropriated ... [Emphasis added.]
[2] This distinction must be made or else a property owner who has acreage enough to meet the one-unit per two acres land designation can avoid such restriction (assuming the zoning is appropriate) by selling off smaller plots. The new owners, using this trial court judgment as authority, could then demand to build on one acre, or one-half acre, etc. While inappropriate zoning may well constitute a taking, if size alone is the determining factor, as I perceive to be the case herein, then how and when the parcel became substandard must be considered. If it is the zoning itself that makes the property economically inviable, then a taking has occurred. If it is the size of the parcel which affects its use, voluntarily and knowingly acquired for the purpose of requiring rezoning because of its size in order to enhance its value, no taking has occurred. See John G. Lane Line, Inc. v. City of Jacksonville, 196 So.2d 16 (Fla. 1st DCA 1967) which denied rezoning, stating:

The chancellor further found, however, that the change in character of the land in dispute which occurred between the date of zoning and the present did not arise from natural or other causes beyond the control of the plaintiff which rendered it no longer adaptable to residential use. (Lane at 17).
[3] In the trial court's order, he struck the requirement to grant such variances as may be necessary to permit a billboard yet ordered specific C-3 zoning. The order for specific zoning appears contrary to City of Miami Beach v. Weiss, 217 So.2d 836 (Fla. 1969). Of equal significance, however, is that Lust appears to have received no remedy. Without the variances, he still appears unable to erect his signs. What he appears able to do is to acquire additional agriculture zoned land from his neighbors to accommodate the set back requirements and then build any C-3 appropriate business on the 2100 square foot parcel.
[1] § 163.3187, Fla. Stat. (1989).