## REDNER, et al. v CITY OF TAMPA

Case No. 89-15392 (County Court Case Nos. 89-7511; 89-7512, 89-7513, 89-7914)

Thirteenth Judicial Circuit, Hillsborough County

May 11, 1990

### APPEARANCES OF COUNSEL

Luke C. Lirot, Esquire, for appellant.

Michael A. Fogarty, Esquire, Linda Julin McNamara, Esquire and Michael Larrinaga, Esquire, for appellee.

### OPINION OF THE COURT

RICHARD A. LAZZARA, Circuit Judge.

The Appellants stand convicted of violating the adult use provisions of Chapter 43A of the Tampa Zoning Code. See Sections 43A-197 and 43A-219. They have mounted a multi-pronged attack on the constitutional and legal validity of these provisions in an effort to overturn

their convictions.[1] The Court has carefully reviewed their contentions and determines that it is appropriate to address only one issue[2] —was it required by law that the adult use provisions of Chapter 43A of the Tampa Zoning Code be enacted in accordance with the notice and public hearing requirements of section 166.041(3)(c), Florida Statutes (1983)?[3] A brief synopsis of Tampa's efforts to regulate adult use is essential to resolving this issue.

The predecessor ordinance regulating adult uses of the type at issue in this appeal was originally found in Chapter 43 of the Tampa Zoning Code. It was adopted on September 30, 1982 as Ordinance 8068-A. See Section 43-21. This section prohibited a defined adult use from being located within five hundred feet of certain designated residential areas and within 1000 feet of another adult use. A provision allowing for the waiver of these locational restrictions by the Tampa City Council was also included.

The adult use provisions at issue in this appeal were adopted on February 17, 1984 as part of Ordinance 8482-A. This ordinance promulgated a new zoning code for the City of Tampa which was denominated Chapter 43A. Although this new code was not to take effect immediately and was not made applicable to the locations of adult uses which constitute the basis of Appellants' convictions until

---

[1] The Appellants took a similar approach before the Trial Court and filed comprehensive motions to dismiss. (R 350-355; 373-378; 387-392 and 401-406). The Trial Court denied these motions. (R 446-461) Thereafter, the Appellant Redney was found guilty by a jury and Appellants Burns and Fernandez pled nolo contendere reserving their rights to appeal the denial of their motions to dismiss. Because of the common issues involved, their appeals were consolidated. (R 462-464)

[2] An opinion was rendered on May 8, 1990 in the case of *Redner v State of Florida,* Appellate Case No. 89-4992 by another Circuit Judge in this judicial circuit sitting in his appellate capacity. The record in that appeal, which the Trial Court considered in this case and which this Court has also reviewed (see n. 7 *infra)* has been referenced by the parties in their briefs, with the Appellee referring to it as "Redner I." To the extent that this opinion addressed and resolve the same common issues raised in this appeal, except the one specifically resolved by this Court, the Court adopts it as its own.

[3] Under this section, ordinances which rezone specific parcels of private real property or which substantially change permitted use categories in zoning districts must be enacted with specific procedures. Where the proposed rezoning or change in permitted use involves less than 5% of the land area of the municipality, notice to affected property owners and one public hearing are required. In cases in which the proposed ordinance deals with more than 5% of the total land area of the municipality, stricter procedures must be followed, one of which is that two public hearings be held. *Daytona Leisure Corporation v Daytona Beach,* 539 So.2d 597, 599, n.2. (Fla. 5th DCA 1989).

58

December 17, 1987,[4] the intent of the new zoning code was clear—"to establish and control land use regulations for the City of Tampa, except the Central Business District." (R 647-648)

The Appellants contend that Ordinance 8482-A which created Chapter 43A was not enacted in compliance with section 166.041(3)(c) and is invalid as applied to them. The Appellee concedes that it did not utilize the requirements of this statutory subsection but instead followed the requirements of section 166.041(3)(a) which is all the law required because the new zoning code was not designed to take effect immediately and thus did not rezone property or change any permitted uses within a zoning district. Moreover, the Appellee argues that prior to the time Chapter 43A was in fact made specifically applicable to Appellants' adult uses by Ordinance 9880-A, the more stringent requirements of section 166.041(3)(c) were followed, a fact that Appellants do not dispute.

The issue for this Court's resolution is whether the enactment of Ordinance 8482-A which created Chapter 43A of the Tampa Zoning Code in the context of adult uses "substantially change(d) permitted use categories in zoning districts. . ." as contemplated by section 166.041(3)(c)? If this was the effect of this ordinance as applied to adult uses then the City of Tampa was required to follow the stricter requirements of this statutory subsection and its failure to do so invalidates the Appellants' convictions in that they were convicted of violating provisions of the zoning code which were null and void.[5] *Baywood Construction, Inc. v City of Cape Coral*, 507 So.2d 768 (Fla. 2d DCA 1987), *David v City of Dunedin*, 473 So.2d 304 (Fla. 2d DCA 1985) and *City of Sanibel v Buntrock*, 409 So.2d 1073 (Fla. 2d DCA 1982), *pet. for rev. denied*, 417 So.2d 328 (Fla.1982).

The Court finds that Ordinance 8482-A did have the effect of substantially changing the permitted use of adult businesses in zoning districts in the City of Tampa even though the effect was not an immediate one. This conclusion is based on a careful comparison of the textual changes made between the adult use provisions of the old

---

[4] Ordinance 9880-A specifically applied the adult use provisions of Chapter 43A to the property on which the adult uses at issue were located. Prior to the enactment of this ordinance, the provisions of Chapter 43 continued to regulate the use of these properties. (R 647-648)

[5] In that the Appellants stand convicted of violating the adult use provisions of the code, there is no need to consider this issue in the context of the validity of the rest of the code. *cf. Skaggs v City of Key West*, 312 So.2d 549 (Fla. 3d DCA 1975). See also Section 43A-381, *Severability*.

zoning code and the new zoning code as well as the evidence presented in the proceedings below.

First, the new adult use provisions of Chapter 43A contain an additional locational restriction not found in Chapter 43—an adult use now cannot be located within 500 feet of any institutional (office) district. Section 43A-371(b) establishes five zoning districts within this category.

Second, although both the old and the new zoning codes restricted placement of adult uses within 500 feet of any residential district, the new code increased the number of defined residential districts from eight classifications to fourteen classifications. See Section 43-31(A)(1) and Section 43A-371(a).

Third, the new zoning code, unlike the old zoning code, mandates that what takes place inside an adult use must not be capable of being observed from any public or semi-public areas, street or way. See Section 43A-197, *Adult Uses,* (b).

Fourth, a close review of the waiver provision of the new zoning code reveals that they are more stringent than the waiver provisions of the old zoning code. See Section 43-32(B) and Section 43A-197, *Adult Uses,* (c). That is, the adult use waiver applicant must now establish that the adult use will not be contrary to the Tampa Comprehensive Plan 2000[6] nor will it interfere with any program of Urban Renewal or City-County or Neighborhood Comprehensive Development Plans.

Fifth, under the old code, the criteria utilized by the City of Tampa as to placement of adult uses was threefold—the property must have the proper zoning, the adult use must be located 500 feet from a residential district, and the adult use must be 1000 feet away from another adult use. (RI 446) Under the new code, in addition to the new criteria of having to be 500 feet away from an institutional district, an adult use is now classified as an S1 Special Use and is subject to a special use permitting process administered by the Zoning Administrator. See Sections 43A-35(b), 43A-191 and 43A-192.

Finally, the evidence considered by the Trial Court,[7] leaves no doubt

---

[6] This is a substantial new burden given the importance that the legislature has placed on such land use plans in the context of limiting a local government's authority to exercise its zoning power. *Machado v Musgrove,2rf 519 So.2d 629, 632-632 (Fla. 3d DCA 1987) See also Alachua County v Eagle's Nest Farms, Inc.,* 473 So.2d 257 (Fla. 1st DCA 1985).

[7] The Trial Court, with the consent of the parties, considered the record in Redner I (see n. 2 *supra*). (R 143-146 and 243-144) This Court has also reviewed that record and will refer to that record as (RI —).

that Ordinance 8482-A, which established Chapter 43A of the Tampa Zoning Code, substantially affected land use as to every piece of property in the City of Tampa (RI 448-450), including the establishment of minimum lot sizes for all zoning districts (RI 459-460). Moreover, in the context of adult uses, a person seeking to establish such a use in conformity with the requirements of Chapter 43A would have four or five fewer sites available than were available under Chapter 43. (RI 774-775)

Faced with these facts the Appellee still argues that all Ordinance 8482-A did was to change the text of the Tampa Zoning Code and left for another day its actual application to land use within the city on a quadrant by quadrant basis.[8] Therefore, the Appellee concludes that because the ordinance did not have an immediate effect on the existing rules and regulations governing adult uses within zoning districts, Section 166.041(3)(c) did not have to be utilized. The Trial Court adopted this argument in denying the Appellants' motions to dismiss. (R 447-452)

This Court respectfully disagrees with the legal conclusion announced by the Trial Court and finds that the Trial Court erred as a matter of law in denying the Appellants' motions to dismiss as to this issue. There is no question that the text of the new zoning code substantially changed the permitted use category of adult uses within zoning districts. As noted above, these substantial changes consisted of additional an additional locational restriction, increasing the number of residential zoning districts, prohibiting the display of what goes on inside an adult use from persons located outside the use, adding additional restrictions in the waiver process, and providing for a special use permitting process. Add to these factors the testimony previously cited about the effect the text had on every piece of property in Tampa and the elimination of four or five available adult use sites and the conclusion is inescapable - Ordinance 8482-A as it related to adult uses

---

[8] It is interesting that the Appellee conceded to the Trial Court that when the zoning text was being considered for actual application to an individual's piece of property at the later public hearings held in accordance with the provisions of section 166.041(3)(c), such an individual could not at those public hearings attempt to change a particular zoning district for the entire city. Instead, an individual would have to petition the city council "for an amendment to Chapter 43-A, which would not be done at the area-wide public hearings." (R 232-233) Thus it is logical to conclude that at the time of these later public hearings the zoning text of Chapter 43A was "cast in stone." This means that a member of the public could not object at these later hearings to the inclusion of the institutional district locational restrictions, the increase in the number of residential zoning districts, the requirement that all windows, doors, etcetera, be covered, or the establishment of the special use permitting process.

"substantially change(d) permitted use categories in zoning districts" as contemplated by section 166.041(3)(c).

Given that conclusion the City of Tampa was required to comply with the strict notice and pubic hearing requirements of section 166.041(3)(c) when it adopted the adult use provisions of Chapter 43A by way of Ordinance 8482-A, no matter when the text of the ordinance was to be specifically applied to land use by adult businesses. As the Attorney General of Florida so succinctly stated in Opinion 80-104:

> Thus, any amendment to the *"substantive provisions"* or *"general text"* of a zoning ordinance which has the effect of changing or altering existing uses or restrictions or existing regulations of land or permissible activities thereon within designated zones or districts is a type of rezoning. (Emphasis supplied)[9]

It is significant that this opinion was in response to an inquiry (acknowledged by the Attorney General to be somewhat unclear in nature) from the City of Ocala regarding whether the special notice requirements of Section 166.041(3)(c) must be followed if the City sought to change "either the procedural or *substantive provisions*" of its municipal zoning code "that might affect all *future* petitions to rezone private property but having no *immediate effect* on any pending proceeding to zone or rezone private property." (Emphasis supplied)

Moreover, to accept the Appellee's argument would be contrary to the manifest intent of the legislature in promulgating section 166.041(3)(c). The legislature made it quite clear that when a municipality enacts an ordinance[10] of the type at issue in this case, it must strictly satisfy the requirements of that statutory subsection. There is nothing to indicate that an ordinance which is to take effect in the future in terms of its actual application to land use is exempted from these requirements. And it is not the function of this Court to engraft exceptions to a statute; that is the exclusive province of the legislature.

Additionally, the appellate courts of this State have made it quite clear that the notice and public hearing requirements of this statutory

---

[9] This statement by the Attorney General is in clear conflict with the argument made by Appellee at oral argument to the effect that no one cares about a zoning text because the text does not have anything to do with how a person can use his or her land.

[10] Section 166.041(a) defines ordinance as "an official legislative action of a governing body, which action is a regulation of a general and permanent nature and enforceable as a local law." There is no contention that Ordinance 8482-A as applied to adult uses is not such an ordinance.

subsection are not hollow or meaningless rights. In that regard, as the Court in *Daytona Leisure Corporation, supra,* stated:

> Florida follows the majority view whereby measures passed in contravention of notice requirements are invalid(null and void if not strictly enacted pursuant to the requirements of Section 166.041). (Cites omitted) Where an ordinance substantially affects land use (substantially changes permitted use categories). . ., it must be enacted under the procedures that govern zoning and rezoning, i.e., section 166.042(3)(c). (Cite omitted) At Page 599.

The record is clear: Ordinance 8482-A was adopted on February 16, 1984 as the definitive zoning code which was to control the use of land in the City of Tampa with the exception of the Central Business District[11] and it substantially changed the permitted use category of adult uses in zoning districts by, *inter alia,* prohibiting such a use from being located within 500 feet of an additional zoning district (institutional), increasing the number of residential zoning districts they are prohibited from being near, requiring the covering of certain apertures in their businesses and establishing a special use permitting process for such uses. The fact that its application was delayed and prior to its application the notice requirements of Section 166.041(3)(c) were followed is of no significance.[12] Thus the failure to comply with the requirements of Section 166.041(3)(c) renders those portions of Chapter 43A for which the Appellants were convicted null and void.[13] As the Florida Supreme Court so concisely stated in *Ellison v City of Fort Lauderdale,* 183 So.2d 193, 195 (Fla. 1966):

---

[11] Indeed, the prefatory statement of the ordinance reads "AN ORDINANCE AMENDING CHAPTER 43, CITY OF TAMPA CODE; AND ESTABLISHING A SUBCHAPTER 43A, A *ZONING CODE TO PROVIDE LAND USE REGULATIONS WITHIN THE CITY OF TAMPA,* WITH THE EXCEPTION OF THE CENTRAL BUSINESS DISTRICT. . ." (Emphasis supplied) Moreover, although application of this ordinance was to be delayed, the City Council mandated that its staff and the staff of the Hillsborough County City-County Planning Commission use the zoning text in preparing recommendations for the Comprehensive Land Use Zoning Conformance Program. (R 647)

[12] The Appellee concedes that the hearings held in connection with the quadrant rezonings did not apply to the enactment of ordinance 8482-A. (Brief of Appellee, p. 25)

[13] This Court recognizes the City of Tampa's authority to use its zoning power to regulate adult uses and that this authority "must be accorded high respect." *Young v American Mini Theatres, Inc.,* 96 S.ct. 2440, 2453 (1976) and *Renton v Daytime Theatres, Inc.,* 106 S. Ct. 925 (1986). However, this authority must be exercised in accordance with the notice and public hearing requirements mandated by the legislature in Section 166.041(3)(c). *ellison, infra.*

The special grant of zoning power is conditioned by the provision for notice and public hearing. Since the City [Council] did not comply with the notice and public hearing provisions, the ordinance under which the [appellants were] arrested and convicted was invalid.

Therefore, the Appellants' convictions are reversed and their cases are remanded to the Trial Court with directions to discharge them.